## GRIFFIN *v.* THE STATE.

No. 11530. FEBRUARY 10, 1937.

*William Story, M. S. Potter, H. L. Jackson*, and *Corbitt & Sumner*, for plaintiff in error.

*H. C. Morgan*, solicitor-general, and *J. P. Knight*, contra.

RUSSELL, Chief Justice. Sollie Griffin was indicted for the murder of James Griffin. Both were white men. On the trial the defendant challenged the array of jurors, because negroes who were citizens and taxpayers in the county, and qualified to serve on juries, had been systematically excluded from jury service solely because of their race and color, in violation of the 14th amendment to the United States constitution; and because women were excluded from jury service, attacking Code, § 59-106, and the State constitution (§ 2-4501), which provides for the selection "of the most experienced, intelligent, and upright men to serve as grand jurors," and "upright and intelligent men" to serve as traverse jurors, as violative of the 14th amendment to the

constitution of the United States. The judge found against the challenge. Exceptions pendente lite were filed, and error is assigned thereon.

The defendant was chief of police of the City of Nashville, Georgia. On December 24, 1935, about 7:30 o'clock p. m., the defendant and two other police officers of the city came upon the deceased and others standing on the sidewalk in front of a storehouse. The deceased had apparently been drinking, some evidence being to the effect that he was intoxicated. The defendant claimed that he received a call that the deceased was drunk and disorderly on the sidewalk in front of the store, and in response he and his brother officers went to this location and there found the deceased, who had been "drinking." The defendant had no warrant for the arrest of the deceased. He ordered the deceased to go home, and the evidence for the State was that the deceased started home, when the defendant and the other policemen caught up with him and arrested him. The defendant claims that the deceased did not go directly home, but stopped to talk to some people in a car, and "slung loose" from any of the "boys" who tried to lead him, and the officers decided that they had better lock him up. On the way to the jail he was escorted by the defendant and the other officers; and after they got down the street toward the jail the deceased began to pull back. A crowd gathered and followed the officers with their prisoner to the jail. On the way, or as they arrived at the jail, the defendant struck the deceased in the face and broke his nose, claiming that the deceased was resisting and pulling back. In putting the deceased in the jail his leg was caught in the door; and while the officers were trying to get his foot in and shut the door (the deceased lying on his back in the jail room), some one, not the deceased but presumably his brother, struck the defendant and knocked him down. When he got up from the ground he pulled his pistol. About that time the deceased or some one pushed open the jail door. The defendant claims that the deceased was advancing upon him with a stick of firewood taken from the jail room, and saying that no one was going to lock him up; whereupon the defendant shot at the deceased, not with the intent to kill him but to stop him, to prevent his escape, and to protect defendant's life. The first shot missed, and the deceased turned "sort of" around, and the next bullet struck him in

the back, inflicting a wound from which the deceased died three or four days later in the hospital at Valdosta. The trial resulted in a verdict that the defendant was guilty of involuntary manslaughter in the commission of an unlawful act. He was sentenced to serve from one to three years. He moved for a new trial on general and special grounds. The judge overruled the motion, and the defendant excepted. In their brief his counsel state that they do not insist on the general grounds of the motion.

1. Under the facts of this case, the judge did not err in overruling the challenge to the array of jurors because negroes who were citizens and taxpayers of the county, and qualified to serve on juries therein, had been systematically excluded from jury service solely on account of their race and color, in violation of the 14th amendment to the Federal constitution; and because women also were excluded from jury service; the defendant attacking Code § 59-106, and the State constitution (§ 2-4501), which provide for the selection of "the most experienced, intelligent, and upright men to serve as grand jurors," and "upright and intelligent men" to serve as traverse jurors, as violative of the 14th amendment to the United States constitution. The defendant was a male white citizen. He does not show how he was harmed or prejudiced by the systematic exclusion of women and negroes from traverse juries, or how this exclusion violated any right of his. It is a well-known axiom of the law that this court will not consider a constitutional attack upon an act where the party attacking the same "does not allege any injury accruing to him by the enforcement of the act," and "A court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has, therefore, no interest in defeating it," and "a party must be prejudiced by the enforcement of a statute, or the courts will not listen to an objection by him to its constitutionality." *Reid* v. *Eatonton*, 80 *Ga.* 755, 757 (6 S. E. 602); *Plumb* v. *Christie*, 103 *Ga.* 686 (30 S. E. 759, 42 L. R. A. 181).

2. The court did not err in charging the jury that where two law officers are jointly engaged in making an arrest, and the person they are attempting to arrest makes a felonious assault upon the person of either of them, or the circumstances are such as to excite the fears of a reasonable man that a felony is about to be

committed on such officer, either the officer on whom the assault is made or is threatened or his fellow officer would be justified in killing the person making the assault; the alleged error being that the jury were thus led to believe that such principle would only be applicable where there were two officers engaged in making the arrest, and would not be applicable if there were more than two officers so engaged, in that under the evidence the defendant was accompanied by two fellow officers on the occasion of the arrest and the homicide.

3. The judge charged the jury that "a police officer of a municipality is an officer that is authorized to make an arrest, providing that at the time he makes the arrest or seeks to do so that he is armed with a legal or proper warrant for the arrest of the person he is seeking to arrest; and that is true . . where the officer is armed with such warrant, regardless of whether or not the party sought to be arrested has actually committed a crime or not. In other words, . . possession of a valid, legal, and proper warrant for the arrest of a man in the hands of an officer is his authority to make that arrest, and he is not concerned with, nor compelled to inquire as to, whether the party sought to be arrested is guilty of the crime charged in the warrant or not. In this connection, . . an arresting officer without a warrant, upon mere information that another has committed an offense, is not authorized to make an arrest; and if he makes an arrest, or seeks to do so, under those circumstances, the arrest would be an illegal arrest, and the party sought to be arrested would have a right to either escape or to resist arrest, and in resisting arrest would be authorized to use such force as was reasonably necessary to prevent the illegal arrest being made." This instruction was applicable, because the State was contending that at the time of the homicide the defendant was illegally arresting the deceased, in that he had no warrant therefor, and in that the deceased had committed no crime in the presence of the defendant. Nor was this instruction erroneous on account of the failure of the court, in connection therewith, to charge the provisions of the Code, § 58-608, as to public drunkenness, and the provisions of section 2 of the code of ordinances of Nashville, prohibiting drunkenness upon the streets. A correct and applicable instruction is not error because of the failure of the court to embrace therein another cor-

rect principle of law. See *Peeples* v. *Rudulph,* 153 *Ga.* 17 (111 S. E. 548), and cit.; *L. & N. R. Co.* v. *Bean,* 49 *Ga. App.* 4; 6 (174 S. E. 209). Moreover, such ordinance was not introduced in evidence. Neither the superior courts nor the appellate courts will take judicial cognizance thereof. *Hill* v. *Atlanta,* 125 *Ga.* 697 (54 S. E. 354, 5 Ann. Cas. 614) ; *Kerns* v. *Crawford,* 51 *Ga. App.* 158 (179 S. E. 854).

4. The court did not err in charging the jury that a policeman is not authorized to make an arrest without a warrant and solely upon information that another has committed an offense; and that if he seeks to arrest in such a case, the arrest is illegal, and the person sought to be arrested may either flee from the officer or resist the arrest, and in the latter instance is authorized to use such force as would be necessary to prevent his illegal arrest. This instruction was applicable, and was not erroneous because of failure to embrace therein an instruction to the effect that while ordinarily an officer without a warrant is unauthorized to arrest a person merely upon information of another, yet if the officer, acting on this information, seeks such person and finds that he is at the time violating the Code, § 58-608, prohibiting drunkenness upon a public street, the officer would be authorized to arrest such person. Even if applicable, no request for such an instruction was presented. Furthermore, it does not appear from the evidence that the deceased was guilty of violating the provisions of the Code, § 58-608, at the time the defendant arrested and conveyed him to the city jail. This being so, this is not a case where the deceased was committing the offense of being drunk upon a public street in the city, in violation of the penal statute, at the time of his arrest, and was therefore committing an offense in the presence of the defendant officer. No municipal ordinance prohibiting public drunkenness was introduced in evidence, and hence there is no question of a violation by the deceased, at the time, of a penal municipal ordinance. See *Dorsey* v. *State,* 17 *Ga. App.* 366 (66 S. E. 1096), where a similar situation was involved. It is true that there is a statute making drunkenness in public places a misdemeanor. Code, § 58-608. But this section was designed as a protection against a drunkard's conduct, and not his presence. *Coleman* v. *State,* 3 *Ga. App.* 298 (59 S. E. 829). To be guilty of the misdemeanor defined in this section, the drunkenness must

be made manifest in one or more of certain specified ways. *Graham* v. *State,* 143 *Ga.* 440, 448 (85 S. E. 328, Ann. Cas. 1917A, 595); *Dixon* v. *Slale,* 28 *Ga. App.* 559 (112 S. E. 159). It must be made manifest by unbecoming language or conduct. *Barrantine* v. *State,* 18 *Ga. App.* 726 (90 S. E. 372). The evidence in this case does not show any conduct, condition, or language on the part of the deceased, such as would come within the purview of the provisions of the section 58-608. From the evidence and the statement of the defendant it appeared that he received information that the deceased and others were in an intoxicated condition in front of a store on a street in the city, and the defendant and his fellow officers went to the scene and found the deceased, and he appeared to have been drinking. The deceased was looking for some change that he had dropped. Defendant told deceased to go home, and he started, but stopped on the way to talk to some persons in an automobile. Thereupon the defendant and the other officers came up and arrested him. The defendant stated that after he had ordered the deceased to go home, he started, and whenever any of the "boys" would take hold of his arm he "slung loose." No violation of the Code section appears from these facts.

A new trial will not be granted because the court, in connection with the above instruction, did not give in charge to the jury section 27-207 of the Code, that "An arrest for a crime may be made by an officer, either under a warrant, or without a warrant if the offense is committed in his presence, or the offender is endeavoring to escape, or for other cause there is likely to be a failure of justice for want of an officer to issue a warrant." Especially is a new trial not demanded because the court failed to embody within the instruction the words of the Code section, "if the offense is committed in his presence, or the offender is endeavoring to escape, or for any other cause there is likely to be a failure of justice for want of an officer to issue a warrant." As above stated, a correct charge is not erroneous because the court fails to charge in connection with it another correct principle. No request to charge this section was made by defendant. Without holding that the evidence authorized the court to give this section in charge, the defendant does not assign error on the failure of the court to give the same, but assigns error on the correct and applicable charge actually given, on the ground that the court did not charge this Code section in connection therewith.

5. The court did not err in charging the jury that an officer who arrests, or seeks to arrest, a person charged with a misdemeanor is not authorized to kill him either in order to make the arrest or to prevent his escape. *Holmes* v. *State*, 5 *Ga. App.* 166, 170 (62 S. E. 716); *Croom* v. *State*, 85 *Ga.* 718, 725 (11 S. E. 1035, 21 Am. St. R. 179); 5 C. J. 426. Nor was such charge error because the court did not, in connection therewith, instruct the jury that if the person sought to be arrested commits a felony as a means of escape, or manifestly intends to commit a felony on the arresting officer, or if by reason of the circumstances of such person's attempt to escape the officer believes as a reasonable man that a felony is about to be committed upon him, he would be justified in killing the person who attempts thus to effect an escape. Besides, the jury were fully instructed in this regard, and it does not appear that a timely request for such an instruction was made.

6. The defendant urges that a new trial should be granted, because the charge to the jury, as a whole, was erroneous in that the court, in stating the contentions of the parties, failed to give in charge one of the material defenses set up, to wit, that "the shooting was accidental, in that defendant insisted that at the time of the shooting he did not intend to kill or wound the deceased," and because the court nowhere charged to the jury the provision of section 26-404 of the Code that "A person shall not be found guilty of any crime or misdemeanor committed by misfortune or accident, and where it satisfactorily appears that there was no evil design, or intention, or culpable neglect." It is contended that this defense was raised by the defendant's statement and by the evidence. This contention is without merit. The defendant either shot the deceased as he was advancing on defendant with a heavy stick in a menacing manner, or shot the deceased without cause, as he was in the act of raising himself from the floor of the jail. But even if the theory of homicide as the result of accident or misfortune was involved, it was under the defendant's statement alone, and there was no request to give section 26-204 in charge. *Carter* v. *State*, 15 *Ga. App.* 343 (83 S. E. 153), and cit. Furthermore, it is our opinion that the evidence in this case, including defendant's statement, does not make a case where homicide by accident and as the result of misfortune is involved at all. The defendant's contention was that he killed the

deceased in self-defense while completing a lawful arrest and imprisonment of the deceased for being drunk on the street on Christmas eve, 1935. After the officers reached the jail, and while the foot of the deceased was hung in the door and it could not be shut, some one, not the deceased, struck the defendant and knocked him down; and his version of further happenings when he arose is as follows: "When I got up from being knocked down and told the crowd to stand back, it seemed that the most of them did, except two fellows I didn't know who were standing over here right out in front, in front of the door, but a little to one side, and I didn't see any one else there except myself and Hamp [father of deceased], Bubber Hall, and Frank Allen [the two fellow officers], and Culpepper Lewis and Paul Jones. When I turned around to the door to see if I could be of any help I could hear them talking. I couldn't see so good, because it was rather dark, and I was looking down trying to get to the door, and when I got to the door and I looked up James [the deceased] was on his feet with a piece of wood in his hand in a striking position, and I told him to stop, and fired up in the jail, and he turned right around. I didn't know whether he had hold with both hands, but he turned around this way, like he was going to throw it, and he was standing about three feet from the open door, from the doorsill rather. The door opened this way, and he was standing off by the corner of the door shutter, which would put him about three feet from the doorsill. I thought I would shoot in there to maybe stop him. I didn't want to kill him or hit him if I could stop him, and he didn't stop, and I fired again, thinking maybe it would hit him in the arm or hand or something. I had no malice against anybody. We had always got along together. We were relatives, and I always thought well of them. What I did was only in the discharge of my duty to try to protect myself—my own life. . . I wouldn't have killed Jimmy Griffin for anything if I could have kept from it, or if I saw any way around it. In fact I didn't mean to do it, and when I fired the last shot it was together. He stooped, and then I reached and partly closed the door."

In a case where the defendant claims that he shot the deceased in self-defense, accidental homicide is not applicable, the two theories of defense being contradictory. In *Curry* v. *State,* 148

*Ga.* 559 (97 S. E. 529), this court held: "Section 40 of the Penal Code . . has no application to a case where the contention of the defendant, and the evidence introduced, raises only the defense of accidental killing of the deceased while the defendant was acting in self-defense in resisting a felonious assault upon him." So it has been held that where one voluntarily fires a loaded pistol at another, although the intent was not to kill but only to wound or cripple the deceased, this would not be an accidental homicide. *Stovall* v. *State,* 106 *Ga.* 443 (32 S. E. 586); *Smith* v. *State,* 73 *Ga.* 79; *Studstill* v. *State,* 7 *Ga.* 2. Furthermore, the offense of involuntary manslaughter in the commission of an unlawful act is involved in this case; and the jury found the defendant guilty thereof. It has been held that where the homicide is from culpable neglect or the result of an unlawful act, the defense of accidental homicide is not involved. *Pool* v. *State,* 87 *Ga.* 526 (13 S. E. 556); *Allen* v. *State,* 134 *Ga.* 380 (67 S. E. 1038); *Herrington* v. *State,* 31 *Ga. App.* 167 (120 S. E. 554). This ground of the motion for new trial presents no error.

8. The evidence authorized the verdict of guilty of involuntary manslaughter in the commission of an unlawful act. The court did not err in overruling the motion for new trial.

*Judgment affirmed. All the Justices concur.*