## WEIST ET AL. *v.* DIRKS.

[No. 27,168. Filed May 16, 1939. Rehearing denied
June 12, 1939.]

*Weiss, Seligman & Born,* for appellants.

*Fae Patrick,* and *Garrett W. Olds,* for appellee.

FANSLER, J.—This is an appeal from an interlocutory judgment enjoining the appellants from picketing the retail grocery and food store of the appellee. The petition for injunction was heard upon the verified complaint and affidavits and upon the testimony of witnesses, with full opportunity for examination and cross-examination.

In appeals of this character the court is not concerned with the pleadings and will consider only the evidence which tends to support the judgment. It is not necessary that such a case shall be made as would entitle the plaintiff to relief at all events at the final hearing. It is enough if the evidence shows the case to be a proper one for investigation in a court of equity, and that the facts are such that the thing sought to be enjoined should be prevented until the final determination of the case. *Tuf-Tread Corporation et al.* v. *Kilborn* (1930), 202 Ind. 154, 172 N. E. 353.

There is no controversy concerning the facts material to a determination of the appeal. The appellee operates a retail grocery and food store in connection with which he purchases from a jobber, and sells at retail, milk and other dairy commodities processed by the East End Dairy Company. The East End Dairy Company has more than fifty employees, four of whom are members of the appellant union. Representatives of the union demanded that the company sign a contract, by the terms of which it would agree to employ only members of the union, and would require, as a condition for continuing employment, that all of its employees join the union. This the company refused to do. The appellant

Wiest and another representative of the union demanded that the appellee. discontinue handling the products·of the company. The appellee made inquiry and found that the company was paying wages in excess of the union scale, and that its controversy with the union involved a "closed shop." He also ascertained that there were no "closed shop" dairy products produced in the Indianapolis milk shed. He told the appellants that he would not discontinue handling the products of the East End Dairy Company, and he continued to handle them. The appellants caused appellee's place of business to be picketed. The picketing was peaceful. The pickets carried a sign upon which was printed:

"Please buy Union Dairy Products Only
"This Store sells milk produced in an unfair Dairy
"East End Dairy is unfair to organized labor."

The appellee's business has been interfered with and disturbed by the picketing.

The Indiana Labor Anti-Injunction Statute (Acts 1933, ch. 12, p. 28, section 40-501 et seq., Burns' Ind. St. 1933, section 10155 et seq., Baldwin's Ind. St. 1934) provides procedure governing injunction actions arising out of labor disputes.

The appellee contends that there is no "labor dispute," as defined by the statute, involved in the controversy; that therefore the statute does not apply.

The appellants contend that there is a "labor dispute" involved; that the statute applies; that the procedural sections of the statute were not followed; and that for that reason the judgment should be reversed. As we view the record, it is not necessary to determine whether or not there is a "labor dispute" involved.

The procedure provided for in the act was followed with the exception that there was no special finding of facts and no peace officer was made a party to the proceeding.

In the latter respect, however, it is noted that there was no charge of the commission of any acts of violence or trespass against which a policeman or peace officer has power or authority to protect the plaintiff's property, and in such case the statute must be construed as not requiring any showing or finding as to the ability or willingness of a public officer to furnish adequate protection, or as requiring that the officer should be made a party, since there is no necessity for inquiry as to whether such officer is willing or able to protect the plaintiff's property.

If the case involves a "labor dispute" it was error to refuse to find the facts specially. But, since the material facts are not in dispute, and the controversy as to whether the temporary injunction should issue involved, and now involves, questions of law only, this error was not prejudicial nor does it require a reversal of the judgment. *Elliott et al.* v. *Pontius et al.* (1894), 136 Ind. 641, 35 N. E. 562, 36 N. E. 421. Section 2-1071 Burns' Ind. St. 1933, section 175 Baldwin's Ind. St. 1934, provides that no judgment shall be reversed for any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties. Section 2-3231 Burns' Ind. St. 1933, section 505 Baldwin's Ind. St. 1934, provides that no judgment shall be reversed for any defect in the proceedings which might have been amended in the court below, but such defects shall be deemed to be amended in this court, and no judgment shall be reversed where it shall appear that the merits of the cause have been fairly tried and determined. Section 2-3229 Burns' Ind. St. 1933, section 467 Baldwin's Ind. St. 1934, authorizes this court to weigh the evidence in cases not triable by a jury, and to award judgment according to the clear weight of the evidence. Since the facts material to a decision are not in dispute, these statutes are control-

ling. The appeal is from an interlocutory order. Regardless of the result of this appeal, the case remains to be tried upon the merits. To send it back to the trial court, with directions to find the facts specially, when there can be but one finding upon the material facts, would be to, in effect, require the court below to amend its proceedings. Under the statute above referred to, this must be treated as having been done. No good purpose would be served by sending the case back, since, upon a return here, the same questions would be involved. The rights of the parties are best protected by a determination of these questions now, and a return of the case for prompt and final disposition upon the merits.

It is established by the authorities beyond controversy that picketing which involves false statements or misrepresentation of the facts concerning the controversy is unlawful and will be enjoined. *Scofes et al.* v. *Helmar et al.* (1933), 205 Ind. 596, 187 N. E. 662; *Karges Furniture Co.* v. *Amalgamated Woodworkers Local Union No. 131 et al.* (1905), 165 Ind. 421, 75 N. E. 877; *Goldfinger* v. *Feintuch, etc.* (1937), 276 N. Y. 281, 11 N. E. (2d) 910, 116 A. L. R. 477; *Senn* v. *Tile Layers Protective Union et al.* (1937), 301 U. S. 468, 57 S. Ct. 857, 81 L. Ed. 1229; 116 A. L. R. 497; 27 A. L. R. 653; 16 A. L. R. 232; 6 A. L. R. 928.

The printing on the banners displayed by the pickets is, to say the least, misleading. It necessarily leads to the inference that the products of the East End Dairy Company sold by the appellee are produced by non-union labor, and that there are products produced by union labor to be had. It does not appear that the other food stores in the neighborhood were picketed. The undoubted purpose of the picketing was to attract the attention of the community and of the appellee's customers and prospective customers, and it was obviously intended that the banners should be influential

in affecting the attitude of such customers toward the appellee. The natural conclusion to be drawn from the information upon the banners is that the appellee was selling non-union products by choice when he might obtain union products, and, since the other food stores were not picketed, it would be naturally concluded that the products sold in these other stores were union products and that they differed in this respect from those sold in the appellee's store. This, according to the evidence, is not true. All dairy products available in the community were produced in plants which employ both union and non-union employees, or at least none was produced in shops employing union labor exclusively. If the East End Dairy Company was in fact unfair to organized labor, it appears to be by reason of the fact that it employed non-union as well as union employees. If such products are not union dairy products, there are no union dairy products in the community, and the request, "Please buy Union Dairy Products Only," cannot have the effect of procuring prospective customers to buy union dairy products, since there are none. It is not unreasonable to conclude that the only result of such a request is to persuade the public that union products can be had at stores which are not picketed, and cannot be had at the appellee's store. This is misrepresentation. If the signs displayed by the pickets had disclosed the true facts concerning the controversy, it would clearly appear that the appellee was handling identically the same character of products handled by every other food store in the community with respect to their being produced by union labor, and such picketing therefore would be ineffective to coerce the appellee to handle the products of some other dairy, and would be of no force in persuading prospective customers to deal with some other food store rather than with the appellee.

The appellants rely upon the Goldfinger Case as supporting their position, but concede that it is to be distinguished from the case at bar for the reason that in that case the plant whose products were picketed was the only one in New York producing non-union goods, whereas in the case at bar there is no plant producing union goods.

It is clear that milk and dairy products are necessary to the public health, and public policy will not permit picketing for the purpose of coercing or inducing the community to refrain from using milk or dairy products.

In the Karges Case, cited above, the right of a labor union to advertise and persuade by picketing is said to be comparable to the right of a merchant to sell his wares in competition with others and to be measured by the same limitations. It is said, 165 Ind. page 428, 75 N. E. pages 879, 880, that: "A tradesman, singly or in combination with others, may lawfully advertise his goods, undersell, solicit, and win the customers of his rival, knowing that he is thereby ruining the latter's business. This is competition, and is what the law commends as 'the life of trade.' In such cases one loses his property by the acts of his neighbor, but it is *damnum absque injuria*. But the contest must be a fair and honest one. If the same tradesman, singly or with others, advertises his goods, undersells, solicits, and wins away the customers of his rival by false representation, intimidation or artifice—not to better himself, but to injure his rival—he has committed an actionable wrong."

It must be concluded that the evidence justifies the conclusion that the facts advertised by the banners of the pickets were calculated to produce a false impression upon the public. Regardless of the intention of the pickets, the statements have the effect of misrepresent-

ing the facts in controversy. Since this is true, it supports the conclusion that the picketing as conducted was unlawful and the temporary injunction justified.

In view of this conclusion, it is unnecessary to consider the other questions discussed in the briefs.

The judgment is affirmed, and the case remanded for further proceedings.