MASON & DIXON LINES INC. *v.* ODOM *et al.; et vice versa.*

Nos. 13916, 13942. FEBRUARY 13, 1942.

*Edgar & Allan Watkins,* for plaintiff.

*Howard, Tiller & Howard* and *Frank Morrison,* for defendants.

REID, Chief Justice. ■ The first question presented for decision is whether the defendants forfeited their conceded right to picket the plaintiff, by acts of violence committed in connection with the strike. Counsel for the plaintiff cites and relies on Milk Wagon Drivers Union of Chicago *v.* Meadowmoor Dairies Inc., 312 U. S. 287 (61 Sup. Ct. 552, 85 L. ed. 836). In that case the Supreme Court held that all picketing might be enjoined where it was entangled with acts of violence of such character and extent that "it could justifiably be concluded that the momentum of fear generated by past violence would survive, even though future picketing might be wholly peaceful." The court declined, under the record, to reverse the finding of the Supreme Court of Illinois to this effect. "We can not say that such a finding so contradicted experience as to warrant our rejection." In the present case, while there were admitted acts of violence definitely attributable to the members of the defendant union, the trial judge has declined to find, as did the Supreme Court of Illinois, that, by the unlawful acts displayed, future peaceful picketing would be coercive; and just as the Supreme Court in the Meadowmoor case was unwilling, under the record, to set aside the finding of the Supreme Court of Illinois, we are not disposed, under the evidence before us, to set aside the trial judge's finding, as being beyond the range of legitimate inference. We conclude that the proof in this record is such that we are not authorized to hold as a matter of law that such finding is without any evidence to support it.

■ The next question is whether the judge erred in refusing to enjoin the defendants from picketing the stores for which the plaintiff was hauling merchandise. This type of activity is referred to in the adjudicated cases as secondary picketing. The courts have generally held that secondary picketing is not within the scope of permissible activity of those engaged in a strike with their employer. See 31 Am. Jr. 949, §§ 232, 234. In some States this is qualified to the extent that picketing of the employer's customer is permissible where it is directed against the

product of the employer there sold and distributed. Goldfinger *v.* Feintuch, 276 N. Y. 281 (11 N. E. 2d, 910) ; Hydrox Ice Cream Co. *v.* John Doe, 293 N. Y. Supp. 1013; Johnson *v.* Milk Drivers &c. Union (La. App.), 195 So. 791; Wiest *v.* Dirks, 215 Ind. 568 (20 N. E. 2d, 969). In at least one of these States it seems to be held that where the employer merely furnishes services, and not a commodity, secondary picketing is not allowed. Commercial Window Cleaning *v.* Awerkin, 242 N. Y. Supp. 797. However, in Thornhill *v.* Alabama, 310 U. S. 88 (60 Sup. Ct. 736, 84 L. ed. 1093), the Supreme Court in declaring unconstitutional a statute of the State of Alabama prohibiting picketing said: "In the circumstances of our times the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the constitution." This was followed in Carlson *v.* California, 310 U. S. 106 (60 Sup. Ct. 746, 84 L. ed. 104), the court there saying that "publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth, or by banner, must now be regarded as within that liberty of communication which is secured to every person by the fourteenth amendment against abridgment by a State." In American Federation of Labor &c. *v.* Swing, 312 U. S. 321, 715 (61 Sup. Ct. 568, 735, 85 L. ed. 855, 1145), the Supreme Court stated the question before it as follows: "Is the constitutional guarantee of freedom of discussion infringed by the common-law policy of a State forbidding resort to peaceful persuasion through picketing, merely because there is no immediate employer-employee dispute?" The court in its decision said: "Such a ban of free communication is inconsistent with the guarantee of freedom of speech. That a State has ample power to regulate the local problems thrown up by modern industry and to preserve the peace is axiomatic. But not even essential powers are unfettered by the requirements of the bill of rights. *The scope of the fourteenth amendment is not confined by the notion of a particular State regarding the wise limits of an injunction in an industrial dispute, whether those limits be defined by statute or by the judicial organ of the State. A State can not exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain*

*only an employer and those directly employed by him.* The inter-
dependence of economic interest of all engaged in the same industry
has become a commonplace. American Steel Foundries *v.* Tri-
City Council, 257 U. S. 184, 209 (42 Sup. Ct. 72, 66 L. ed. 189).
The right of free communication can not therefore be mutilated
by denying it to workers, in a dispute with an employer, even
though they are not in his employ. Communication by such em-
ployees of the facts of a dispute, deemed by them to be relevant
to their interests, can no more be barred because of concern for
the economic interests against which they are seeking to enlist
public opinion than could the utterance protected in Thornhill's
case." (Italics supplied.) See also Senn *v.* Tile Layers Union,
301 U. S. 468, 478 (57 Sup. Ct. 857, 81 L. ed. 1229), cited by
the court in the Swing case. The Meadowmoor case, supra, in-
volved secondary picketing, and the court there clearly recognized
the application to such a case of the principles above quoted;
though an injunction against such activity was upheld because of
violence, as already discussed. This would in fact necessarily seem
to follow from the rulings made in the Swing case. That case
involved the effort of a union to unionize a shop where there was
no dispute between the employer and his employees. Picketing
in such case, like secondary picketing in a case of the present
character, has been generally condemned by State courts, and upon
like grounds. We are unable to perceive any rational reason why
the constitutional guarantee of freedom of speech, if it applies to
a situation like that presented in the Swing case, does not also
apply in a case like the present. The defendants in the present
case invoked the provisions of the Federal court action dealt with
in the foregoing case; and we conclude, that, under these de-
cisions, employees engaged in a labor dispute with their em-
ployer have the constitutional right to peacefully picket a customer
of their employer by displaying banners, signs, etc., stating the
true facts of their controversy with their employer and the position
of the person so picketed as a customer of such employer. "When
we know with certainty that a question arising under the con-
stitution of the United States has been definitely decided by the
Supreme Court of that government, it is our duty to accept the
decision, for the time being, as correct, whether it coincides with
our own opinion or not. Any failure of due subordination on our

part would be a breach, rather than the administration, of law." *Wrought Iron Range Co.* v. *Johnson,* 84 *Ga.* 754, 759 (11 S. E. 233, 8 L. R. A. 273), quoted in *Gernatt* v. *Huiet,* 192 *Ga.* 729, 731 (16 S. E. 2d, 587). Thus it is seen, that, despite whatever views we might entertain, if we were at liberty and not under the restraint of these adjudications, narrow boundaries have been fixed, beyond which a State may not go either by its legislature or through the tribunal exercising judicial powers, in protecting against this sort of interference with normal enjoyment of property or pursuit of trade or business. So being bound to follow the decisions of the Supreme Court on such a question, any of our own decisions that may be to the contrary, and those of courts of other States, must now be disregarded. Accordingly, we are of the opinion that the prayer for injunction restraining all picketing as against the customers of the plaintiff was properly denied.

■ The last question for determination (that presented by writ of error 13942) is whether the judge was correct in finding that the defendants had wilfully violated the temporary restraining order enjoining them "from picketing any store  .   .   for whom plaintiff as a common carrier hauls freight," while the same was in full force and effect. In this connection, it was stipulated that after the grant of the temporary restraining order the defendants distributed handbills to customers of Davison-Paxon Company, reading as follows: "Mason & Dixon Freight Lines unfair to organized labor. Davison-Paxon Co. ship over Mason & Dixon," "said handbills being handed to persons entering said store at two of the entrances to said store;" and that "defendants had employed a person who carried a large sign on his back containing the same language as was printed on said handbills, and that said person had for approximately three days prior to said hearing walked back and forth along Whitehall Street and Peachtree Street in the City of Atlanta for a distance of several blocks, and that this employee of the defendants carried said sign along Peachtree Street on the opposite side of the street from Davison-Paxon Co." It is argued that this activity did not constitute picketing; but we hold the contrary opinion. The acts of the agents of the defendants, in standing at the entrances of Davison-Paxon Company and distributing handbills of the character mentioned were nothing more or less than picketing as that term is usually defined, as also was

the act of the defendants' agent in walking on the opposite side of the street from the store with a sign on his back containing the same statement as contained in the handbills. 31 Am. Jur. 943, § 223. We accordingly think that the admitted acts disclose a violation of the order of the court, which, though erroneous, should nevertheless have been obeyed until reversed or set aside.

Under the foregoing rulings the judgment in both cases should be                    *Affirmed.   All the Justices concur.*