## 47152. TRAYLOR v. THE STATE.

EVANS, Judge. The defendant was indicted, tried and convicted of the possession of heroin. Motion for new trial was duly filed and amended and thereafter overruled. The appeal is from this final judgment. *Held:*

1. The main contention of the defendant involves the denial of his motion to suppress the evidence because it was an illegal search and seizure, there being no probable cause therefor, and the same was in violation of the 4th and 14th Amendments of the United States Constitution. An Atlanta police officer testified that he and two other police officers were aware that there had been burglaries of a small grocery store in a small shopping center; that it had been reported to him by informants that narcotics and drugs were being used in the parking lot of the shopping center and that crap games go on there quite frequently; that he and the two other police officers drove up to this parking lot at 2:15 a.m. on August 11, 1971, "to try to break up the crap game." There were approximately 15 males in the area. One of the officers announced over a public address system that they were all under arrest. A crap game was going on in one corner, and the occupants began to run in all directions. This defendant, who had been leaning against an automobile, got into a Cadillac automobile and fled the scene. The officer stopped him on the street, again advised him he was under arrest for "prowling," and ordered him out of the automobile, at which time they noticed him taking white paper like "plastic" out of his pockets and placing it under the arm rest of the car. Later, packages of heroin were found under the arm rest.

Whether or not there was sufficient evidence to convict the accused of prowling or gambling (*Code Ann.* § 27-313; Ga. L. 1966, pp. 567, 571) requires that in any hearing of a motion to suppress the evidence of an illegal search and seizure, the burden of proving that the same was lawful shall be on the State. On three separate occasions

the officer advised defendant he was under arrest for "prowling," and defendant chose to ignore or defy the arrest, and left the parking area. He was forcibly stopped on the street, and taken into custody for "prowling." The defendant had the right to leave, and to ignore or defy the arrest, if said arrest was illegal. *Griffin v. State,* 183 Ga. 775, 779 (190 SE 2); *Mullis v. State,* 196 Ga. 569, 580 (27 SE2d 91). It was therefore incumbent on the State to show that defendant was legally arrested for "prowling," by introducing an exemplified copy of the city ordinance on the subject, if such existed. Failure to introduce such evidence resulted in showing that the arrest was illegal, and the officer was thereafter without any authority to seize the packages of heroin he found under the arm rest while holding the defendant under an illegal arrest.

In the case of Wong Sun v. United States, 371 U. S. 471 (1-4) (83 SC 407, 9 LE2d 441) the United States Supreme Court clearly and concisely holds that the fruits of an illegal arrest are not admissible in evidence against a defendant, and a conviction which is based upon evidence thus illegally admitted must be reversed and set aside. See also Collins v. United States, 289 F2d 129, 130 and cits. Of course, this court is absolutely bound by the decisions of the United States Supreme Court on Federal questions, which were invoked in this case. *Thornton v. Lane,* 11 Ga. 459, 500; *Mason & Dixon Lines v. Odom,* 193 Ga. 471 (1) (18 SE2d 841).

This Federal authority is not to be confused with those authorities—and they are numerous—which hold that an officer may be afforded the right to make a search and seizure, without a search warrant, where he observes illegal conduct or contraband merchandise (*Ramsey v. State,* 92 Ga. 53, 63 (17 SE 613); *Howell v. State,* 162 Ga. 14 (6c) (134 SE 59); Moore v. United States, 296 F2d 519; Capitoli v. Wainwright, 426 F2d 868; Harris v. United States, 390 U. S. 234 (88 SC 992, 19 LE2d 1067)); nor is it to be confused with those authorities which hold

that an arrest may be made without a warrant where the defendant's conduct is such as to justify the apprehension that he is about to commit an illegal act, or is committing such act, or is about to escape after having committed such act. *Code* §§ 27-207, 27-211; *Seals v. State,* 33 Ga. App. 818 (8) (128 SE 224); *McEwen v. State,* 113 Ga. App. 765 (2) (149 SE2d 716); *Pistor v. State,* 219 Ga. 161 (2a) (132 SE2d 183); Ker v. California, 374 U. S. 23, 34 (83 SC 1623, 10 LE2d 726). Our courts have held that greater latitude may be granted the officers of the law in searching automobiles and other mobile conveyances than in searching houses and premises without such mobility. See Carroll v. United States, 267 U. S. 132, 153 (45 SC 280, 69 LE 543, 39 ALR 790); Chambers v. Maroney, 399 U. S. 42, 48 (90 SC 1975, 26 LE2d 419).

But none of these conflict with the proposition here laid down, and as held in the Federal authorities previously cited, that once an *illegal* arrest is made, all evidence resulting from searches and seizures during or following the illegal arrest must be repelled and not allowed in evidence.

2. All other enumerations of error are based on the general grounds of the motion for new trial and are not argued here; hence they are deemed abandoned.

*Judgment reversed. Bell, C. J., Deen, Quillian and Clark, JJ., concur. Hall, P. J., Eberhardt, P. J., Pannell and Stolz, JJ., dissent.*

Submitted May 1, 1972—Decided September 20, 1972—
Rehearing denied October 25, 1972.

*Glenn Zell,* for appellant.

*Lewis R. Slaton, District Attorney, Joel M. Feldman, Carter Goode,* for appellee.

Stolz, Judge, dissenting. The majority opinion is predicated on the theory that the search of the defendant's car was based solely on his arrest for "prowling." As pointed

out in the majority opinion, the defendant's arrest took place at approximately 2:15 a.m. at a small shopping center in which a burglary had recently been attempted, where illegal gambling was in progress when the officers arrived and where narcotics were suspected of being used. The record shows that all stores in the shopping center were closed and that some 10 to 15 persons were there when the officers arrived and announced over their public address system that everyone was under arrest. The defendant attempted to leave the area and, in so doing, almost ran over an officer with his (defendant's) automobile. The majority contends that the defendant had the right to leave and to ignore and defy the arrest, that it was incumbent upon the State to show that the defendant was legally arrested for violating the Atlanta City Ordinance prohibiting "prowling." I disagree. The issue before the court is whether the officer had probable cause for his search of the defendant's automobile and the seizure of the heroin therein. I believe that he did for several reasons.

(1) The officer made no attempt to use force in attempting to arrest the defendant. Yet, the defendant almost ran over the officer in his automobile attempting to escape and thus committed an assault on the officer. *Code Ann.* § 26-1301 (b).

"Where an arrest is not lawful, the person sought to be so arrested. . . has the right to resist, and in doing so 'has a right to resist force with force proportionate to that being used in unlawfully detaining him.' But, even here, the mere fact of unlawful arrest, in the absence of unlawful force amounting to or reasonably appearing to amount to a felony, will not authorize the killing of the officer." *Mullis v. State,* 196 Ga. 569, 579 (27 SE2d 91); *Graham v. State,* 143 Ga. 440, 446 (85 SE 328, AC 1917A 595); United States v. Nooks, 446 F2d 1283 (5th Cir., 1971).

Thus, the officer had the right to arrest the defendant for the commission of a crime in his presence. *Garrison v. State,* 122 Ga. App. 757 (178 SE2d 744).

Flight of the accused, in connection with other circum-

stances, has likewise been held sufficient to constitute probable cause for an arrest without a warrant and search. *Richardson v. State,* 113 Ga. App. 163 (147 SE2d 653).

(2) The officers also had probable cause to arrest the defendant for gambling or as a material witness to its commission. For an excellent discussion of a history of the law on this latter point, see the opinion by Judge Powell in *Crosby v. Potts,* 8 Ga. App. 463 (69 SE 582), where Sir Francis Bacon is quoted (p. 465) as declaring in the case of Countess of Shrewsbury, 2 How. St. Tr. 769, 778 (1612), "You must know that all subjects, without distinction or degrees, owe to the King tribute and service, not only of their deed and hand, but of their knowledge and discovery."

Under the circumstances, the only method available to the officer to secure the defendant's attendance as a witness to the crime, was to arrest him. When the defendant indicated by his actions his reluctance to be arrested, and his resort to flight in attempting to avoid arrest, the officer was justified in conducting the search complained of, particularly where, as here, the officer personally observed the defendant removing the heroin from his person and attempting to secrete it in his automobile.

(3) The officers had probable cause to make an "investigative stop" due to the nature of the circumstances heretofore mentioned. Terry v. Ohio, 392 U. S. 1 (88 SC 1868, 20 LE2d 889).

In Dodd v. Beto, 435 F2d 868, 870, it was said: "The test of probable cause is not the articulation of the policeman's subjective theory but the objective view of the facts." In that case an officer who was informed that the defendant had been seen concealing a gun near a bank and sporting goods store and had driven away in an automobile, had probable cause to arrest the defendant and search his automobile, including the trunk, as a hiding place for the gun, although he did not know at the time that the gun had been stolen. The 5th Circuit noted further: "From the information known ... there was probable cause to believe in several possible crimes. Carrying a concealed weapon is an

obvious one. Given the proximity to the bank, attempted robbery is another. Given the proximity to the sporting goods store, theft of the gun is a third plausible crime. That the officer did not know that a gun had been stolen is no bar to probable cause to believe a theft had been committed . . . Because he had probable cause to arrest the defendant, the officer was justified in searching the car as the hiding place for the gun and therefore no search warrant was required."

However, if all of the above would not authorize the search of the defendant's automobile, it was surely sufficient to authorize the officer to stop the defendant and ask for identification. Thereafter, when the officer saw the defendant attempting to conceal clear plastic bags with a white powder substance therein he had probable cause to believe a felony (possession of heroin) was then being committed in his presence and reach into the automobile and seize the contraband. *Lofton v. State*, 122 Ga. App. 727, 728 (178 SE2d 693).

The officers observed the suspected heroin in plain view as the defendant was attempting to conceal it. What they observed served as a basis for probable cause for the subsequent search and seizure of the heroin.

(4) The majority contends that the defendant can not be convicted of possession of narcotics since the municipal ordinance on "prowling" was not introduced into evidence. Again, I must disagree. In Klingler v. United States, 409 F2d 299, cert. den. 396 U. S. 859 (90 SC 127, 24 LE2d 110), the defendant was convicted of violating the section of the Federal Firearms Act which prohibits a former convict, as was defendant, of transporting a firearm in interstate commerce. The facts revealed that at approximately 4:00 a.m., on May 17, 1967, an officer of the Sioux Falls, South Dakota police department was advised by radio that a bandit, wearing sunglasses and a green jacket, and needing a shave, had robbed a Sioux Falls service station earlier that morning and was in a brown and white 1955 or 1956 Pontiac automobile with Minnesota license plates. Two metal

construction helmets were said to be visible through the rear window. At about 5:00 a.m., the officer, while driving a patrol car on routine duty, observed two men in an automobile parked in a private parking lot. As the patrol car passed, the other automobile began to move. The officer turned the patrol car around and stopped the suspects. Their car, a 1957 white and salmon/coral Pontiac with South Dakota license plates, had two metal construction helmets visible through the rear window. The officer had the two men get out of the car and produce identification. Their drivers' licenses indicated they were from Huron, South Dakota. They said they were in Sioux Falls looking for work. Their clothes were in disarray. The defendant was wearing an olive colored waistcoat and had about two days' growth of beard. There were sunglasses on the dashboard.

The officer called for assistance. Upon the arrival of other officers, the two suspects were arrested for vagrancy pursuant to a Sioux Falls city ordinance. No attempt was made by the officers to determine whether either suspect had money, although suitcases, personal belongings, and a box of food were in the car. One of the officers commenced to search the car and discovered a .22 calibre pistol under a ventilated cushion on the front seat, which formed the basis for the charge and conviction. *The defendant was not prosecuted for vagrancy or for the aforesaid robbery.* In upholding the defendant's conviction, the court stated (p. 304): "We agree that vagrancy was an unsuitable ground for the arrest. We note, however, that the record in this case fails to show bad faith on the part of the officers in making the arrest for vagrancy. The testimony suggests that [an officer] made what appears to be an honest mistake in specifying the reason for arrest . . . Objectively, the facts known to [the officer] prior to the arrest and search met the standard of probable cause. *Notwithstanding the officer's mistaken statement of grounds, the existence of probable cause for a robbery arrest prevents the vagrancy arrest from being considered pretextual.*" (Emphasis supplied.)

Later in its opinion (p. 305), the court dealt specifically with the question, Does an officer's statement of an unsuitable ground for arrest void the arrest and search incident thereto, and answered the same in the negative. In so doing, the court noted: "The validity of the arrest hinges on yet another question: Was the arrest invalid because the arresting officer notified Klingler that he was under arrest for vagrancy rather than for armed robbery? . . .

"Cases in this court . . . on corresponding factual circumstances have held that an officer's statement of an unsuitable ground for arrest neither voids the arrest nor a search incidental thereto. For example, in McNeely v. United States, 353 F2d 913 (8th Cir. 1965), the driver of an automobile was arrested for 'littering' by an officer, who had not, in fact, seen the suspect throw anything from the vehicle. Judge Gibson, speaking for this court, upheld the validity of the arrest. He observed: 'The law cannot expect a patrolman, unschooled in the technicalities of criminal and constitutional law, following the heat of a chase, to always be able to immediately state with particularity the exact grounds on which he is exercising his authority. We believe that if the officer had probable cause to arrest and otherwise validly performed the arrest, he is not under the circumstances of this case required to immediately recognize and accurately broadcast the exact grounds for this action or suffer the arrest to come under constitutional criticism. Therefore, since [the officer] had probable cause to believe the occupants of the car were engaged in felonious activity, the arrest of McNeely was valid regardless of the initially stated grounds for arrest.'"

For the foregoing reasons, I would affirm the conviction and must respectfully dissent.