## 51440. LaRUE v. THE STATE.

CLARK, Judge.

Alfred Lash LaRue was convicted of unlawfully possessing marijuana in violation of the Georgia Controlled Substances Act. His principal contention on appeal is that the trial court erred in denying his motion to suppress the seized drugs. *Held:*

1. Defendant was arrested purportedly for violation of a city ordinance prohibiting public drunkenness. Marijuana was seized from his person pursuant to this arrest. At the suppression hearing in which defendant challenged the legality of his arrest, the state failed to introduce a certified copy of the city ordinance, if such

existed, prohibiting public drunkenness. Therefore, this ordinance, whose existence this court may not judicially recognize, cannot serve as a basis for upholding the arrest and incident search. *Traylor v. State,* 127 Ga. App. 409 (193 SE2d 876). See also *Mayor &c. of Savannah v. TWA,* 233 Ga. 885, 887 (214 SE2d 370).

The state attempts to avoid the effect of the *Traylor* ruling by arguing that the arrest may be upheld as a violation of the public drunkenness provisions of § 26-2607 of our state criminal code. In order to effectuate a valid arrest under this Code section, however, the actor's drunken condition must be "manifest by boisterousness, or by indecent condition or act, or by vulgar, profane, loud, or unbecoming language. . ." Code Ann. § 26-2607 (Ga. L. 1968, pp. 1249, 1315). See *Peoples v. State,* 134 Ga. App. 820 (216 SE2d 604), and cits. The record clearly shows that defendant did not exhibit such behavior and that his conduct did not fall within the purview of this penal provision.

The state has failed to show any legal justification for defendant's arrest. The trial court therefore erred in permitting the fruits of the unlawful arrest to be introduced in evidence. Wong Sun v. United States, 371 U.S. 471 (83 SC 407, 9 LE2d 441). Likewise, the marijuana seized from defendant's car should have been suppressed, since the probable cause supporting this search was derived solely from the prior illegality. We thus conclude that all of the drugs seized were fruits of the illegal arrest and that the trial court erred in overruling defendant's motion to suppress.

2. The state contends, however, that the defendant's testimony at trial rendered harmless any error in the admission of the drugs. Defendant's motion to suppress the drugs on the basis of an unlawful search and seizure had previously been denied. At trial, the drugs were admitted in evidence and defendant's possession of the contraband thus proved. Defendant elected to testify in his own behalf. He admitted possession of the marijuana, explaining that he had obtained the forbidden item by exchanging a Bible with some youthful hitch-hikers whom he had just converted to Christianity, and that he was carrying the drugs solely for the purpose of destroy-

ing them.

In arguing that defendant's testimony rendered any error in the admission of the drugs harmless, the state relies upon *Taylor v. State,* 134 Ga. App. 79 (213 SE2d 137) and *Cadle v. State,* 136 Ga. App. 232 (221 SE2d 59). These cases held that even though drugs may have been illegally seized in violation of the Fourth Amendment, any error in admitting the drugs in evidence was harmless, since the defendant in each case admitted his possession when testifying at trial. We are now persuaded, however, that a judicial determination of harmless error can only be made on a case by case basis and in accordance with certain principles enunciated by the United States Supreme Court. Accordingly, to the extent that *Taylor* and *Cadle* establish per se rules of harmless error, these cases must be overruled.

The landmark decision of Chapman v. California, 386 U. S. 18 (87 SC 824, 17 LE2d 705) established those principles to be followed in determining whether constitutional errors may be deemed harmless. Rejecting the contention that all federal constitutional errors must always be considered harmful, the court stated that there may be some constitutional errors which are so insignificant within the context of the factual situation of the particular case as to render the error harmless, not requiring the automatic reversal of a conviction. But, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt," and the burden for this showing rests with the prosecution. In fashioning a rule by which courts might determine whether a constitutional error is harmless, the Chapman Court adopted the language of Fahy v. Connecticut, 375 U. S. 85 (84 SC 229, 11 LE2d 171): "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction."[1]

---

[1]The Chapman Court also held that the determination of whether a Federal constitutional error is harmless is a matter of Federal law. It is thus clear that in determining the harmful effect of a Fourth Amendment

Fahy v. Connecticut, supra, dealt with the relationship between the harmless error principle and fruit-of-the-poisonous-tree doctrine enunciated in Wong Sun v. United States, 371 U. S. 471 (83 SC 407, 9 LE2d 441). Fahy had been convicted of willfully injuring a public building by painting swastikas on a synagogue. On appeal, the Connecticut Supreme Court found that the can of black paint and paint brush admitted into evidence were obtained as a result of an unlawful search and seizure, but that its admission constituted harmless error. The Supreme Court reversed.

The significance of Fahy is the manner in which the court determined "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." In determining the harmless error question, the court considered not only the evidentiary impact of the illegally seized items, but also the impact of other evidence which were found to be fruits of the prior illegality. It was held that the illegally seized evidence could not be rendered harmless by certain verbal admissions, since these statements were made only after defendant had been confronted with the illegally seized items. Thus, defendant's admissions were fruits of the prior illegality. As such, they could not form a proper basis upon which to hold as harmless the erroneous introduction in evidence of the paint and brush.

The court in Fahy also intimated that defendant's trial testimony might be a fruit of the prior illegality: "Nor can we ignore the cumulative prejudicial effect of this evidence . . . at trial. It was only after admission of the paint and brush . . . that the defendants took the stand, admitted their acts, and tried to establish that the nature of those acts was not within the scope of the felony statute under which the defendants had been charged." Fahy v. Connecticut, supra, p. 91.

Fahy establishes the proposition that harmless error in the admission of illegally obtained evidence cannot be predicated upon the evidentiary fruits of the prior

violation, state-fashioned rules of harmless error must give way to principles enunciated by the United States Supreme Court. See Chapman, supra, pp. 20-21.

illegality. To the contrary, in ascertaining the harmful effect of the error, the fruits of the illegality are to be construed as additional evidence which may have contributed to defendant's conviction. Under what circumstances, however, does a defendant's trial testimony constitute a fruit of the illegality? This question was answered by the Supreme Court in Harrison v. United States, 392 U. S. 219 (88 SC 2008, 20 LE2d 1047). Harrison's murder conviction at his first trial was reversed due to the erroneous admission of illegally obtained confessions. Harrison testified at this first trial after his confessions had been admitted in evidence. At his second trial, the prosecutor did not, of course, offer the alleged confessions in evidence. But he did read to the jury Harrison's testimony at the prior trial—testimony which placed the defendant, shotgun in hand, at the scene of the killing. The Supreme Court granted certiorari "to decide whether the petitioner's trial testimony was the inadmissible fruit of the illegally procured confessions."

We quote the reasoning utilized by the court in resolving this issue: "In concluding that the petitioner's prior testimony could be used against him without regard to the confessions that had been introduced in evidence before he testified, the Court of Appeals relied on the fact that the petitioner had 'made a conscious tactical decision to seek acquittal by taking the stand after [his] in-custody statements had been let in . . .' But that observation is beside the point. The question is not *whether* the petitioner made a knowing decision to testify, but *why*. If he did so in order to overcome the impact of confessions illegally obtained and hence improperly introduced, then his testimony was tainted by the same illegality that rendered the confessions themselves inadmissible." Harrison, supra, p. 223.

The court noted the difficulty in unraveling the many considerations that might have led Harrison to testify. "But, having illegally placed his confessions before the jury, the Government can hardly demand a demonstration by the petitioner that he would not have testified as he did if his inadmissible confessions had not been used." Rather, the burden is upon the government to

"show that its illegal action did not induce his testimony." The court concluded that the government failed to show that defendant's testimony was not induced by the erroneous admission of the illegally obtained evidence. "It has not been demonstrated, therefore, that the petitioner's testimony was obtained 'by means sufficiently distinguishable' from the underlying illegality 'to be purged of the primary taint.' "

The rationale of Harrison was also utilized to reverse the Supreme Court of North Carolina's ruling in State v. McDaniel, 272 N. C. 556 (158 SE2d 874), revd. 392 U. S. 665. The North Carolina court held that the erroneous admission of an unconstitutionally obtained statement by a defendant and of a weapon found as the result of such statement, was cured by defendant's subsequent testimony in his own behalf to the same set of facts. The court concluded that "defendant elected to testify" and that his testimony rendered harmless the erroneously admitted evidence. In a per curiam opinion, the United States Supreme Court vacated the judgment and remanded the case "for further consideration in light of Harrison v. United States." McDaniel v. North Carolina, 392 U. S. 665 (88 SC 2310, 20 LE2d 1359).

It is abundantly clear that the harmless error issue presented here may only be determined by applying the principles of Harrison and McDaniel to the facts of this case. These decisions require this court to ask: Has the state demonstrated that defendant's testimony was not impelled by the erroneous admission of the illegally seized evidence? Clearly, the state has made no such showing here. The prosecution was able to prove defendant's possession of marijuana solely by the admission of the illegally seized drugs. It is obvious that defendant would not have attempted to justify his possession of the drugs had the state been unable to prove possession in the first place. Moreover, had the trial judge correctly excluded this evidence, the state would have had no case whatsoever and defendant would have been entitled to a directed verdict of acquittal.

As the state has not shown defendant's testimony to be other than a fruit of the prior illegality, the erroneous admission of the drugs must be deemed harmful er-

ror.

3. In view of the above ruling, defendant's remaining enumeration, which attacks a portion of the court's jury charge, need not be considered.

*Judgment reversed. Bell, C. J., Deen, P. J., Quillian, Stolz and Webb, JJ., concur. Evans, J., concurs specially. Pannell, P. J., and Marshall, J., dissent.*

ARGUED NOVEMBER 4, 1975 — DECIDED
FEBRUARY 23, 1976.

*Harvey A. Monroe, Paul McGee,* for appellant.
*William H. Ison, District Attorney, James W. Bradley, Assistant District Attorney,* for appellee.

EVANS, Judge, concurring specially.

I agree with the result reached by the majority in this case but not with all that is stated in the opinion.

1. First of all, the majority suggests that the following cases of the Court of Appeals should be overruled, to wit: *Taylor v. State,* 134 Ga. App. 79 (213 SE2d 137); and *Cadle v. State,* 136 Ga. App. 232 (221 SE2d 59). But this suggestion overlooks the case of *Hall v. Hopper,* 234 Ga. 625 (216 SE2d 839), a 4-3 decision by the Supreme Court of Georgia rendered on July 1, 1975, which holds (pp. 631, 632) as follows: "Stability and certainty in law are desirable; stare decisis is a valid and compelling basis of argument. *Cobb v. State,* 187 Ga. 448, 452 (200 SE 796). It is not possible, however, to achieve unanimity in every case which reaches this court. When a majority of this court determines that stability must give way to justice to the prisoner, then justice prevails. The 'full bench rule' has been repealed.

"That repeal occurred some time ago. The effective date of repeal is immaterial."

It should be unnecessary to spell out exactly the message the Supreme Court of Georgia is sending out here, but it simply means that hereafter it is not necessary to overrule any prior conflicting decision; that stare

decisis is a matter for argument only, and is not controlling; that the oldest full-bench rule has been reversed, although it is not necessary to say when it was reversed; that none of these time-honored precedents will be allowed to stand in the way of justice; that stability must give way to justice, as a majority of this court (meaning at least four votes) determines what "justice" is in the particular case under consideration.

It would be interesting to know *when* the oldest full bench rule was repealed, and the volume and page number where it can be found. I apprehend it would be more than a little difficult to be more explicit in this regard. And when did a four-judge decision gain the authority to overrule a full-bench decision? This new and novel and awesome pronouncement leaves us all gasping for breath like the fish that temporarily escapes onto the shore from the net.

No matter how repugnant this case is to all that we ever learned in law, we have to swallow it and abide by it until the Supreme Court decides to come back to the old, tried, tested, and established landmarks of the law.

Therefore, henceforth, it is not necessary to overrule any prior conflicting case; but under the *Hall* case, supra, we may simply disregard all prior conflicting decisions in the interest of seeing that justice is done in the case immediately under consideration.

2. As to the merits of the case, we must consider the reality and actuality of the trial and the situation confronting the defendant when it came time for him to defend or give testimony. If his motion to suppress had been sustained—as he contends it should have been—there would have been no reason for his making an admission of possession of the illegal drug. But under the posture of the case when he took the witness stand, he was faced with the reality that the trial court had overruled his motion to suppress, and he then proceeded to attempt to justify himself in the possession of the drug. Surely any lawyer will realize that the case was not tried as it would have been had the trial judge sustained the motion to suppress.

3. Further, the United States Supreme Court has held that the reasoning set forth by the majority is correct

in Fahy v. Connecticut, 375 U. S. 85 (84 SC 229, 11 LE2d 171). Also see Harrison v. United States, 392 U. S. 219 (88 SC 2008, 20 LE2d 1047); McDaniel v. North Carolina, 392 U. S. 665 (88 SC 2310, 20 LE2d 1359). The Supreme Court of Georgia and the Court of Appeals of Georgia are bound by the decisions of the Supreme Court of the United States as to federal constitutional issues and statutes, even though they may conflict with decisions of the Supreme Court of Georgia. See *Thornton v. Lane,* 11 Ga. 459, (4); *Central of Ga. R. Co. v. Brotherhood of R. Trainmen,* 211 Ga. 263 (1) (85 SE2d 413); *Feldschneider v. State,* 127 Ga. App. 745 (4) (195 SE2d 184); *Dismuke v. State,* 127 Ga. App. 835, 836 (195 SE2d 259); *Traylor v. State,* 127 Ga. App. 409, 410 (193 SE2d 876).


PANNELL, Presiding Judge, dissenting.

I cannot agree with the majority opinion in this case. Appellant urges error in the trial court's overruling his motion to suppress and in admitting the marijuana into evidence. Appellant admitted possession of the marijuana during the trial of the case. The defendant was not forced to take the stand and explain his possession of the marijuana. Rather, he made a voluntary election to testify, admit his possession, and attempt to explain his possession to the satisfaction of the jury. I do not believe that a defendant should be allowed to admit his possession and then seek a reversal based on the fact that the evidence which established possession was improperly admitted. The defendant made an election and should now be bound by it; whether his election was a wise one is not for this court to decide. Accordingly, even if the court committed error in admitting the marijuana into evidence, it was harmless. *Taylor v. State,* 134 Ga. App. 79, 80 (213 SE2d 137); *Cadle v. State,* 136 Ga. App. 232, 234 (221 SE2d 59).

I am authorized to state that Judge Marshall concurs in this dissent.