## A94A0497. ANTHONY v. THE STATE.
(444 SE2d 393)

POPE, Chief Judge.

Defendant Margaret B. Anthony attacked Louise Doty in Doty's carport. Defendant repeatedly struck Doty with a hatchet and tried to choke her, yelling that she would kill Doty for taking defendant's husband. Neighbors heard Doty's cries for help and called the police. When a police officer arrived and told defendant to drop the hatchet, defendant refused to do so. Instead, she threatened the officer with the hatchet, telling the officer she would kill him, too.

After a jury trial, defendant was convicted of two counts of aggravated assault. She appeals, arguing in her sole enumeration of error that she was deprived of a fair trial because the array of potential jurors from which her jury was selected did not represent a proper cross-section of the community. Specifically, she argues that the jury administrator's practice of allowing full-time college students to defer their jury service to their next school break resulted in an array in which those under 25 years of age were overrepresented. (Defendant's trial was held during the first week in January.)

1. The State suggests we need not address the merits of defendant's argument because her challenge of the array was oral and untimely. The record shows that defendant orally challenged the array after voir dire but before selection of the jury. The trial court denied defendant's challenge on the merits, and the parties proceeded to select the jury and have the trial. While defendant's challenge was not in writing at the time it was made, defendant did include her challenge to the array in her written motion for new trial.

"The accused may, in writing, challenge the array for any cause

going to show that it was not fairly or properly impaneled or ought not to be put upon him. The court shall determine the sufficiency of the challenge at once. If sustained, a new panel shall be ordered; if not sustained, the selection of jurors shall proceed." OCGA § 15-12-162. Our Supreme Court has held that "when a panel of jurors is put upon the [accused], he should challenge the array for any cause which would go to show that it was not fairly and properly put upon him, and that if he fails to do so, the objection is waived. . . ." *Williams v. State*, 210 Ga. 665, 667 (1) (82 SE2d 217) (1954). Moreover, we have held that a panel is "put upon" the accused (for purposes of determining when such a challenge must be made) when the array is seated and voir dire begins. See *Guest v. State*, 186 Ga. App. 318 (1) (367 SE2d 105) (1988). Accord *Spencer v. Kemp*, 781 F2d 1458, 1463-1465 (11th Cir. 1986). As explained by the Eleventh Circuit in *Spencer*, the policy underlying this waiver rule is to prevent a defendant from waiting until he sees how he does in jury selection before raising his challenge to the array, see id. at 1465; and the rule is not unduly burdensome because defendants and their attorneys generally "have ample opportunity to acquaint themselves with information upon which to base a decision to abide or attack the jury" in advance. Id. at 1464.

However, our appellate courts have also held that a challenge to the array is not waived as long as it is raised at the earliest opportunity to do so, and that if the defendant has no fair opportunity to put his challenge in writing at that time, he may do so for the first time in a motion for new trial. See *Cobb v. State*, 218 Ga. 10 (3, 4) (126 SE2d 231) (1962); *Morgan v. State*, 161 Ga. App. 484 (1) (287 SE2d 739) (1982). In *Morgan*, the defendant was indicted for several offenses, and one was severed from the rest for separate trial. When voir dire for the second trial began, the defendant realized that the array for that case was the same array from which the jury in the first trial was chosen. He orally challenged the array at that time but did not put his challenge in writing until after the trial, in his written motion for new trial. Under these circumstances, we held that the defendant was not required to anticipate this problem with the array and come to voir dire with a written challenge. Thus, the written challenge in the motion for new trial was adequate to preserve the issue, and we addressed the defendant's challenge on the merits. 161 Ga. App. at 484-485.

Unlike the situation anticipated by the Eleventh Circuit in *Spencer*, defendant's challenge in this case is not to the entire jury roll of the county but only to the array called for the week of her trial. Thus, the problem of overrepresentation of young people could not have been discerned from a pre-voir dire review of the jury roll by defense counsel. Nor was the problem revealed by juror questionnaires, since it was not the policy of the county to require potential jurors to fill

out such questionnaires at that time. Moreover, the panel of prospective jurors was not "put upon" defendant all at one time; the panel was presented and questioned in two separate groups, and it was not until the second group was brought up that the problem of overrepresentation of young people became apparent. Even then, questioning was required to confirm the apparent problem. The waiver rule's underlying policy as set forth in *Spencer* is not present here because the challenge was orally raised before actual selection of the jury. At the same time, application of the rule seems unfair and unduly burdensome because defendant could not have acquired the information necessary to challenge his array prior to voir dire. See *Spencer*, 781 F2d at 1464-1465. As in *Morgan*, defendant raised her challenge orally as soon as she was aware of the basis for her challenge and, unable as a practical matter to put her challenge in writing at that time, she included it in her motion for new trial. Accordingly, as in *Morgan*, we conclude that defendant did not waive her challenge and will address the merits of defendant's argument.

2. A defendant's Sixth Amendment right to a jury chosen from a fair cross-section of the community is implicated when a group is significantly underrepresented in the array *and* that group is distinct or cognizable. See *Potts v. State*, 259 Ga. 812 (1) (388 SE2d 678) (1990). Moreover, the burden of showing both significant underrepresentation and cognizability is on the defendant. See *Hicks v. State*, 256 Ga. 715 (7) (352 SE2d 762) (1987). In this case, defendant has failed to make either of these necessary showings.

First, defendant failed to establish the significant overrepresentation of those under 25 (and concomitant underrepresentation of those 25 and older). A document from Cobb County Information Services indicates that 9.6 percent of the total petit jury pool is 18 through 24 years of age. However, voir dire was not transcribed and the record does not show how many members of this age group were included in defendant's array. Defendant's trial counsel stated at the hearing on the motion for new trial that the panel of 30 contained 13 to 17 students. This statement is not evidence, of course. See *Thomas v. State*, 208 Ga. App. 367 (1) (430 SE2d 768) (1993). The only actual evidence presented in this regard is the testimony of the jury administrator that at least seven of the potential jurors called that week were students; she could not give a more definite number because juror information sheets were not required from all jurors. This evidence is not sufficient to show a significant overrepresentation/underrepresentation.

Second, defendant failed to show that the underrepresented group is cognizable. " 'To show that a group is distinct or cognizable under the sixth amendment, a defendant must show: (1) that the group is defined and limited by some factor (i.e., that the group has a

definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process. [Cit.]' " *Potts*, 259 Ga. at 813. Although earlier Georgia Supreme Court cases stated that age is not a recognized class for purposes of jury representation, see, e.g., *Cobb v. State*, 244 Ga. 344 (2a) (260 SE2d 60) (1979), subsequent cases have held that whether age is a cognizable class for jury selection purposes is a question of fact which will depend in each case upon such factors as the time and location of trial. See *Hicks*, 256 Ga. at 718; *Parks v. State*, 254 Ga. 403 (6b) (330 SE2d 686) (1985). At least one trial court has found young people (18 to 29-year-olds) to be a cognizable group, and defendant urges us to do the same here. See *Parks*, 254 Ga. at 409-410. Unlike the defendant in *Parks*, however, defendant here failed to produce evidence of common attitudes and values on the part of the alleged group. Nor did she show that the group had a definite composition; indeed, defendant argued at some points below that the overrepresented group was 18 to 24-year-olds and in others that it was 18 to 29-year-olds. Moreover, defendant's argument ignores the fact that the group of 18 to 24-year-olds are *over* rather than underrepresented. Thus, even if those under 24 are shown to be a distinct and cognizable group for jury selection purposes, those 25 and older clearly are not, and they — the underrepresented group — are the pertinent group in this analysis. Accordingly, defendant failed to establish that a cognizable group was significantly underrepresented in her array, and the trial court did not err in rejecting her challenge.[1]

*Judgment affirmed. Johnson and Smith, JJ., concur. McMurray, P. J., not participating.*

DECIDED MAY 26, 1994.

*Howard & Delaney, Stephen A. Delaney*, for appellant.
*Thomas J. Charron, District Attorney, D. Victor Reynolds, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.

---

[1] We further note that even if an age group is a cognizable class, it is not a highly protected class. See *Parks v. State*, 254 Ga. 403 (6b) (330 SE2d 686) (1985). Thus a policy or practice resulting in a significant underrepresentation of such a group would be constitutionally acceptable as long as it was rationally related to a legitimate State purpose. Id.