S97A1052. MARTIN v. THE STATE.
(492 SE2d 225)

HINES, Justice.

John T. Martin, Jr. appeals his convictions for felony murder, aggravated assault, and possession of a firearm by a convicted felon in connection with the fatal shooting of Willie Mae Brown.[1] For the reasons which follow, we affirm the convictions.

The evidence viewed in favor of the verdicts showed that in the early morning hours of October 6, 1993, Willie Mae Brown and her neighbor and friend, Donetta Shorty, were sitting and drinking on the porch of Brown's mother's residence. Martin approached the women and indicated that he wanted to enter the residence to visit Joe Whitehead, who was staying there. Brown told Martin that it was too late to go upstairs, but Martin disregarded this and walked up the stairs to enter the home. Brown followed, Martin hit her in

---

[10] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[1] The shooting of Willie Mae Brown occurred on October 6, 1993. On December 21, 1993, Martin was indicted for Brown's malice murder, the felony murder of Brown while in the commission of possession of a firearm by a convicted felon, Brown's aggravated assault, and possession of a firearm by a convicted felon. Martin was also indicted for the aggravated assault of Donetta Shorty and possession of a firearm during the commission of her aggravated assault. Martin was tried before a jury in the Superior Court of Fulton County on October 3-6, 1994, and was found guilty of the felony murder and aggravated assault of Brown as well as possession of a firearm by a convicted felon. He was acquitted of Brown's malice murder and the charges involving Donetta Shorty. On October 20, 1994, Martin was sentenced to life imprisonment. Martin's motion for new trial was filed on October 26, 1994, amended on January 2, 1997, and denied on February 18, 1997. A notice of appeal was filed on March 11, 1997, and the appeal was docketed in this Court on April 1, 1997. The case was submitted for decision following oral argument on June 17, 1997.

the mouth, and the two began to "tussle." The fighting ceased and Martin descended the stairs with Whitehead while Brown stood on the balcony overlooking the two men. Brown and Martin exchanged words. Martin pulled a gun from his pants, pointed it at Brown, and shot her. Martin and Whitehead left the scene, and Martin remarked to Whitehead, "I shot that bitch." Brown bled to death as the result of a single .38 caliber bullet through the chest.

When Martin was arrested a few hours after the shooting, the police found a .38 caliber revolver tucked inside the waistband of his pants. The fatal bullet was positively identified as having been fired from the recovered revolver.

At trial, Martin related a version of events much different from that told by the eyewitnesses. Martin claimed that the revolver had been pawned to him by Whitehead and Shorty, that he and Brown got into an argument about the gun, which Brown claimed as her own, and that he refused to return the gun until he got back the money he had loaned for it. He went downstairs and pulled out the weapon after Whitehead asked him for it. Brown stood on the balcony and cursed at Martin and Martin saw a "flash" in Brown's hand, which he believed to be a gun. As Martin started to turn away, Shorty grabbed Martin's hand in an attempt to get the revolver, and Martin "brought [Shorty] around" and raised his hand in the air to thwart Shorty. Martin testified, "I throwed my hand up, the gun went off."

When asked how Brown's alleged conduct made him feel, Martin stated that he did not "pay [Brown] too much attention." Martin further explained that he had thrown his hand up to wrest the gun from Shorty because he "wasn't going to let her get that gun." Martin unequivocally denied ever pointing the revolver at Brown, that he intended to shoot or harm her, or that he knew she had been shot. He told the jury, "I had no reason to shoot Willie Mae."

1. The evidence was sufficient for a rational trier of fact to find Martin guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Martin fails in his contention that the trial court abused its discretion by denying him a continuance which he sought in order to obtain certified copies of a prosecution witness' convictions in an attempt to impeach the witness. The granting or denial of a continuance is a matter for the sound discretion of the trial court. OCGA § 17-8-22; *Harrison v. State*, 251 Ga. 837, 838 (1) (310 SE2d 506) (1984). Here, the record reflects that defense counsel was aware of the witness' location at least four days prior to the beginning of trial, but that counsel did not speak with the witness until the eve of trial. What is more, Martin has failed to demonstrate how he was harmed

by the denial of his motion for continuance. See *Roland v. State*, 266 Ga. 545, 547 (3) (468 SE2d 378) (1996). The witness admitted during both direct and cross-examination that he had served time for armed robbery in another state, and Martin has neither alleged nor shown that the witness had other convictions which could have been used for impeachment purposes. Because there is no indication that the continuance would have benefitted Martin, it cannot be said to be necessary, nor a breach of the trial court's discretion to deny it. *Johnson v. State*, 255 Ga. 703, 704 (2) (342 SE2d 312) (1986).

3. Martin asserts that the trial court committed reversible error by allowing into evidence a certified copy of his prior felony conviction even though he expressed his willingness to concede his status as a convicted felon. He argues that his case is distinguishable from *Robinson v. State*, 263 Ga. 424 (435 SE2d 207) (1993), because there is not overwhelming evidence of his guilt of the charge of possession of a firearm by a convicted felon. On the contrary, Martin's own testimony provides overwhelming evidence of his guilt of the offense, and the admission of the prior conviction provides no basis for reversal. Id. at 425 (2) (b).

4. Martin is unsuccessful in his claims that he was improperly convicted of felony murder because the status offense of possession of a firearm by a convicted felon is not sufficient to support such a conviction, and that he was denied a fair trial when the trial court refused to bifurcate the trial of the firearm possession charge.

The State's evidence was that convicted felon Martin possessed a firearm and then used it to commit an aggravated assault against the victim which resulted in her death. Under such circumstances, the status offense was dangerous, life threatening, and sufficiently connected to the homicide to serve as the underlying felony for the felony murder conviction. *Weems v. State*, 267 Ga. 182, 183 (2) (476 SE2d 585) (1996); *Roller v. State*, 265 Ga. 213, 214 (2) (453 SE2d 740) (1995). Compare *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992). Accordingly, the possession charge was material to the felony murder, and it was not an abuse of discretion for the trial court to refuse to separately try the offense. *Weems*, supra at 184 (2); *Robinson,* supra at 425 (2); *Williams v. State*, 263 Ga. 135, 136 (1) (429 SE2d 512) (1993); *Head v. State*, 253 Ga. 429, 431 (3) (322 SE2d 228) (1984).

5. There is no merit to Martin's blanket assertion that the trial court violated his right to a fair trial by refusing to instruct the jury on "reasonable doubt, intent, presumptions, and burden shifting." The record discloses that the trial court instructed the jury about the defendant's presumption of innocence, that the defendant would not be presumed to have acted with criminal intent, that the State had

the burden to prove guilt beyond a reasonable doubt, and that the burden of proof never shifted to the defendant to prove his innocence.

6. Martin further contends that he was denied a fair proceeding because the trial court refused to instruct the jury on justification which he claims was his sole defense to the charges of felony murder and firearm possession and his alternative defense to aggravated assault. However, the trial court did not err in refusing to give a charge on justification as it was neither Martin's sole defense nor reasonably raised by the evidence at trial. See *Conner v. State*, 251 Ga. 113, 115 (2) (a) (303 SE2d 266) (1983). Compare *Tarvestad v. State*, 261 Ga. 605, 606 (409 SE2d 513) (1991). Rather the only defense presented by the evidence came from Martin's own statements at trial, which portrayed the shooting of the victim as purely an accident, and accordingly, the court instructed the jury on misfortune or accident. See OCGA § 16-2-2.

Generally, the defenses of accident and self-defense are not both involved in a case. *Berry v. State*, 267 Ga. 476, 478 (3) (480 SE2d 32) (1997); *Turner v. State*, 262 Ga. 359, 360 (2) (b) (418 SE2d 52) (1992). Martin urges that his case is an exception as in *Turner*, warranting that the jury be given the options of both accident and self-defense. This is based on the argument that Martin's testimony showed that he used Shorty as a shield and that the gun accidentally discharged as the result of his attempt to defend himself. But, *Turner* is inapplicable here. See *Head v. State*, 262 Ga. 795, 799 (6) (426 SE2d 547) (1993). Martin's testimony was plain that he had *no reason or intent* to shoot Brown, and that he threw his hand up in the air not to defend himself from Brown, whom he did not fear, but in order to retain control of the handgun, which was his collateral for the money he had loaned.

7. Under the circumstances of this case, it was not error for the trial court to refuse to instruct the jury on unlawful act involuntary manslaughter and reckless conduct. See OCGA §§ 16-5-3 (a); 16-5-60 (b). The evidence established that Martin either intentionally shot and killed Brown, committing aggravated assault and murder, or that his actions were not deliberate and the revolver accidentally discharged resulting in no criminal culpability for Brown's death. "Where . . . the evidence shows either the commission of the completed offense as charged, or the commission of no offense, the trial court is not required to charge the jury on a lesser included offense." *Mason v. State*, 267 Ga. 314, 315 (3) (477 SE2d 568) (1996), quoting *Rowe v. State*, 266 Ga. 136, 139 (3) (464 SE2d 811) (1996).

8. The trial court did not violate Martin's due process rights because in its recharge on aggravated assault it instructed the jury

on subsection (a) (1) as well as (a) (2) of OCGA § 16-5-21.[2] In its initial charge to the jury, the court instructed on the subsections and then limited the jury's consideration to the specific method of committing the offense alleged in the indictment; in fact, it tracked the language of the indictment. Thus, when considered in its entirety, the court's charge fairly instructed the jury that it could convict Martin only of the aggravated assault of Brown as charged in the indictment. *Lumpkin v. State*, 249 Ga. 834, 836 (2) (295 SE2d 86) (1982).

9. Martin does not show reversible error by the contention that the prosecutor improperly introduced new evidence during closing argument when the prosecutor told the jury to pull the trigger on the gun during deliberations to demonstrate the difficulty of doing so, and that the weapon could not be discharged by accident. To begin with, Martin made no objection to the argument at trial. See *Burgeson v. State,* 267 Ga. 102, 108 (8) (475 SE2d 580) (1996); *Crowe v. State*, 265 Ga. 582, 592 (18) (c) (458 SE2d 799) (1995). What is more, the gun was in evidence, and thus, was a proper subject for the prosecutor's final argument, and the jurors could see for themselves the characteristics of the weapon. Compare *Williams v. State*, 254 Ga. 508, 511 (3) (330 SE2d 353) (1985), which involved a weapon's demonstration by an outside party. As to the prosecutor's conclusion that the gun could not be discharged by accident, it was within the considerable latitude given to a prosecutor in final argument. *Williams*, supra at 511 (3); *Johnson v. State*, 246 Ga. 126 (269 SE2d 18) (1980).

10. Lastly, Martin was not denied effective assistance of trial counsel under the standard of *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Counsel's determination not to renew a motion for mistrial based on alleged improper character argument by the prosecutor was based on counsel's assessment that the court's curative instruction was sufficient. This was a decision made in the exercise of professional judgment which did not fall below an objective standard of reasonableness. *Lamb v. State*, 267 Ga. 41, 43 (2) (472 SE2d 683) (1996); *Bentley v. State*, 262 Ga. 801 (2) (426 SE2d 364) (1993).

*Judgments affirmed. All the Justices concur, except Fletcher, P. J., who concurs specially.*

FLETCHER, Presiding Justice, concurring specially.
I respectfully disagree with the reasoning of Division 9 of the

---

[2] OCGA § 16-5-21 provides in pertinent part:
(a) A person commits the offense of aggravated assault when he or she assaults:
(1) With intent to murder, to rape, or to rob;
(2) With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

majority's opinion, but do agree that we should affirm the convictions.

During closing argument, the prosecutor urged the jury to conduct its own demonstration by testing the pull of the trigger. The prosecutor made this argument despite the fact that there had been no expert testimony regarding whether the gun was likely to fire accidentally. In *Williams v. State*[3] this Court held that it was error for the prosecutor to conduct his own demonstration with the murder weapon during closing argument. As we noted in *Williams*, evidentiary demonstrations should take place during trial, or not at all. Therefore, I believe the prosecutor's argument, which permitted the jury to create its own evidence during its deliberations, was improper.

However, given the strength of the state's case against Martin, there is no reasonable probability that the improper argument changed the result of the trial[4] and I concur in the affirmance of the convictions.

DECIDED NOVEMBER 3, 1997 —
RECONSIDERATION DENIED NOVEMBER 21, 1997.

*Monique D. Moyse,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

---

[3] 254 Ga. 508, 511 (330 SE2d 353) (1985).
[4] *Todd v. State,* 261 Ga. 766, 767 (410 SE2d 725) (1991).