## A97A1790. POOLE v. THE STATE.

(494 SE2d 251)

RUFFIN, Judge.

Randolph Poole, Jr. was charged by accusation of, inter alia, violation of the City of LaGrange public drunk ordinance. Following a non-jury trial in the State Court of Troup County, the court convicted Poole of the offense. Poole appeals, challenging the sufficiency of the evidence on the ground that the State failed to introduce into evidence a copy of the municipal ordinance. Because we find that the State failed to properly prove the existence of the ordinance, we agree with Poole and reverse his conviction.

1. Before reaching the merits of Poole's appeal, we must address the jurisdictional issues raised by the dissent. According to the dissent, Poole's conviction was rendered by a municipal court and his appeal must be dismissed because this Court lacks subject matter jurisdiction to consider a direct appeal from a municipal court. In this regard, the dissent contends that the state court could not have convicted Poole of a municipal ordinance violation because the state court lacked jurisdiction to try such ordinance violations. Rather, the dissent argues, when the state court convicted Poole, it was serving as a municipal court pursuant to OCGA § 15-7-80 et seq. For the following reasons, we disagree with both assertions.

(a) A state court's criminal jurisdiction is generally governed by OCGA § 15-7-4 (a) (1), which provides that a state court shall have jurisdiction over the "trial of criminal cases below the grade of felony." This statutory enactment is similar to the legislature's original declaration in establishing state courts that they "shall have criminal jurisdiction in the county over all misdemeanor cases, but shall not have any jurisdiction over felony cases." Ga. L. 1970, p. 679, § 7. The only other guidance afforded by our Code relating to a state court's criminal jurisdiction is OCGA § 15-7-3, which provides that the jurisdiction statute "shall apply to and govern all state courts; and, unless otherwise provided in this chapter, in all cases in which there is a conflict between this chapter and the local law creating the state court, this chapter shall take priority and shall be controlling."

The local law creating what is now known as the State Court of Troup County is codified at Ga. L. 1962, p. 3020. See also Ga. L. 1970, p. 679, § 3 (changing name of court to State Court of Troup

County). The preamble to this enabling legislation shows that the legislature intended in part to create the court in lieu of the City Court of LaGrange and to define its jurisdiction. Id. Specifically, the local law provides that the court "shall have jurisdiction to try and dispose of *all criminal cases for all offenses* committed in the County of Troup where such offenses are designated by law to constitute a misdemeanor." Ga. L. 1962, p. 3020, § 3. (Emphasis supplied.) Similarly, the enabling legislation creating the former City Court of LaGrange granted that court criminal jurisdiction "to try and dispose of all criminal cases for all offenses committed in the county of Troup where the offender is not subject to the loss of life or confinement in the penitentiary." Ga. L. 1899, p. 385, § 3. Importantly, neither enabling statute limited the courts' jurisdiction to try only "state misdemeanor cases," but more broadly defined the courts' jurisdiction to include *all* misdemeanor offenses. And, although the dissent correctly finds that the former Mayor's Court had jurisdiction to try municipal ordinance violations, there is no language in Ga. L. 1901, p. 477, § 18, the legislation creating that court, or in OCGA § 36-32-1, which redefined it as a municipal court, granting *exclusive* jurisdiction to try municipal violations. In the absence of such language, and in light of the broad grant of jurisdiction to the State Court of Troup County, we believe the legislature intended to grant concurrent jurisdiction over these matters to both the municipal court and the state court. See generally OCGA § 1-3-1 (a) ("[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy."). This is the only reasonable construction of the enabling legislation creating the state court, and it does not conflict with the jurisdictional provision of OCGA § 15-7-4 (a) (1).

We note finally that the cases and local laws cited by the dissent in support of its conclusion that the State Court of Troup County does not have jurisdiction over such municipal misdemeanor violations are simply not controlling. Both *Dollar v. State*, 160 Ga. App. 759 (288 SE2d 42) (1981) and *Floyd v. State*, 168 Ga. App. 645 (310 SE2d 749) (1983) concern the jurisdictional limits of the State Court of Cobb County, and the decisions in those cases only interpreted the enabling legislation establishing that particular state court. Similarly, the Georgia law cited in *Dollar*, and quoted by the dissent, is enabling legislation specifically creating what is now known as the State Court of Cobb County and has no application to the present case. See Ga. L. 1964, p. 3211. For these reasons, we must interpret the local law to provide that the State Court of Troup County has jurisdiction over city code misdemeanor violations.

(b) We also disagree with the dissent that the trial court in this case was acting as a municipal court. Although it is clear that OCGA

§ 15-7-80 authorizes a county to contract with a municipality "to furnish municipal court services to the municipality," we do not find, as does the dissent, that "the record is replete with evidence" that the trial court in this case was acting as a municipal court. Rather, the only "evidence" cited by the dissent is the unsworn statement of the assistant solicitor that "the state is under the impression that we are operating under contract." This is not evidence. *Anthony v. State*, 213 Ga. App. 303, 305 (2) (444 SE2d 393) (1994). And, the similar "finding" of the trial court, being unsupported by any evidence, is also insufficient to establish the existence of the contract. See *Adamson v. Trust Co. Bank*, 155 Ga. App. 646, 648 (271 SE2d 899) (1980).

Moreover, even if such a contract existed, more was required of the trial court for it to act as a municipal court. Even after such a contract is entered into and becomes effective, OCGA § 15-7-83 requires that when a state court is acting as a municipal court, that "all judges and other officers of the state court shall be styled as judges and officers of the municipal court; and all pleadings, process, and papers of the municipal court shall be styled as such and not as pleadings, process, and papers of the state court." OCGA § 15-7-83.

In this case, the record makes it abundantly clear that the State Court of Troup County was not acting as the City of LaGrange Municipal Court. In fact, there is not a single pleading, process or paper styled as a municipal court document. The accusation, Poole's affidavit of indigency, discovery requests and demand for witnesses, as well as the trial court's judgment and sentencing form are *all* styled as documents of the State Court of Troup County. Furthermore, the accusation is signed by the "Solicitor [of the] State Court of Troup County," and the trial judge signed the judgment as "Judge, Troup County State Court." Finally, the transcript shows that at the opening of trial proceedings the trial judge stated: "This is the case of the State of Georgia versus Randolph Ray Poole, it's case number 96-S-3570 *in the State Court of Troup County*." (Emphasis supplied.) In short, the total lack of compliance with OCGA § 15-7-83 requires a finding that the court in this case was acting as a state court and not a municipal court. And, in this appeal, Poole is simply challenging the sufficiency of the evidence supporting his state court conviction. Accordingly, contrary to the dissent's finding, this Court does have jurisdiction to consider Poole's appeal as a direct appeal from a state court judgment of conviction.[1] See OCGA § 5-6-34 (a).

---

[1] I note that the dissent has created quite a dilemma for a defendant in Poole's shoes. Although the uncontradicted evidence of record shows that the judgment was rendered by a state court, the dissent concludes that he should have filed an application for certiorari to the superior court. If, however, Poole had applied to the superior court for review, his petition would have properly been dismissed because there was *no evidence* the judgment was

2. Turning to the merits of Poole's appeal, he asserts that he was convicted of violating a municipal ordinance, but the State failed to prove the existence of the ordinance.[2] The record shows that the State did indeed prosecute Poole for violating a city public intoxication ordinance. While the record contains evidence showing that Poole was in fact intoxicated in a public place, "there is no showing that such conduct violated any cognizable criminal law of [the] local government. . . . In the absence in evidence of a properly admissible copy of the ordinance involved, neither the trial court nor this court may take judicial notice of the existence of a local ordinance. *Owens v. State*, 153 Ga. App. 525, 527 (2) (265 SE2d 856) [(1980) (physical precedent only)]." *Dudley v. State*, 161 Ga. App. 310, 311 (1) (287 SE2d 763) (1982). Because the State failed to meet its burden of proving beyond a reasonable doubt that Poole's public intoxication violated any local ordinance, his conviction must be reversed. See *Scarborough v. State*, 231 Ga. 7 (200 SE2d 115) (1973); *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also *LaRue v. State*, 137 Ga. App. 762 (224 SE2d 837) (1976) (Court reversed superior court's denial of motion to suppress and defendant's conviction because the State failed to introduce certified copy of city ordinance prohibiting public drunkenness).

*Judgment reversed. Andrews, C. J., Birdsong, P. J., Johnson and Blackburn, JJ., concur. Pope, P. J., and Eldridge, J., dissent.*

ELDRIDGE, Judge, dissenting.

I respectfully dissent from the majority's opinion.

1. A state court does not have subject matter jurisdiction over the enforcement of a violation of a municipal ordinance absent a statutory conference of subject matter jurisdiction. There has been no statutory conference of subject matter jurisdiction to the State Court of Troup County to try a violation of a municipal ordinance of the City of LaGrange while sitting as a state court.

"The jurisdiction of the state court includes 'misdemeanor cases.' Ga. L. 1964, p. 3211. However, this refers only to state statutes, the violation of which constitutes a misdemeanor, and does not include a city ordinance even though the punishment thereunder may be partially within the range of punishment for a misdemeanor established by state law." *Dollar v. State*, 160 Ga. App. 759, 760 (288 SE2d 42) (1981); see *Floyd v. State*, 168 Ga. App. 645 (310 SE2d 749) (1983)

issued by a municipal court. See OCGA § 5-4-1 (a).

[2] It should be noted that the State has inexplicably failed to file an appellee's brief in this case. Such conduct not only constitutes a dereliction of the solicitor's duties under OCGA § 15-18-66 (a) (4), but may also subject him or her to contempt of this Court under Court of Appeals Rule 26 (b).

(special legislation enacted which specifically conferred subject matter jurisdiction to the State Court of Cobb County to enforce *county* ordinances: Ga. L. 1969, p. 2486). While the majority contends that both *Dollar* and *Floyd* have no application to the present case, because the Georgia law cited in both cases is enabling legislation specifically creating what is known as the State Court of Cobb County, I must disagree. The enabling legislation creating both the State Court of Troup County and the State Court of Cobb County gives both courts identical subject matter jurisdiction over criminal proceedings, i.e., subject matter jurisdiction over those offenses designated by law to constitute misdemeanors. Ga. L. 1964, p. 3211, § 2 (Civil and Criminal Court of Cobb County "shall have jurisdiction to try and dispose of all . . . misdemeanor cases"); Ga. L. 1962, p. 3020, § 3 (Civil and Criminal Court of Troup County shall have jurisdiction to try offenses "designated by law to constitute a misdemeanor"); see also Ga. L. 1970, p. 679, § 3 (changing name of Civil and Criminal Court of both Troup County and Cobb County to the State Court of each respective county). While it is true that neither enabling act specifies "*state*" misdemeanors, there is no need for such redundancy: in state law, an offense is either a felony (which carries a penalty of more than 12 months imprisonment) or the offense is a misdemeanor. OCGA § 16-1-3 (5), (9).

Further, a county or municipal ordinance violation cannot be a state law offense and cannot be designated as a misdemeanor based upon state law criteria, because county and municipal ordinance violations are not described as a crime under Title 16 of the Official Code of Georgia. OCGA § 16-1-4. In fact, the General Assembly in enacting the legislation to provide for the establishment of the Georgia Crime Information Center recognized that county or municipal ordinances are not state misdemeanors by defining an "offense" as an act which is either a felony, a misdemeanor, *or* a violation of a county or municipal ordinance. Ga. L. 1973, p. 1301, § 1 (b); OCGA § 35-3-30 (7). Further, the City of LaGrange, in its 1968 charter, designated a violation of one of its ordinances as an "ordinance violation," not as a misdemeanor, which carried a maximum penalty of a fine not exceeding $500 and imprisonment not exceeding six months. Ga. L. 1968, pp. 2191, 2224, § 7.03; see also Ga. L. 1901, p. 477, § 18.

The City Court of LaGrange was created by Ga. L. 1899, p. 385. Under subsection II of such legislative act, subject matter jurisdiction was given to the City Court of LaGrange to try state misdemeanor cases, which did not specify city ordinance violations. In 1901, a Mayor's Court was created under the new charter for the City of LaGrange, and such court was given specific subject matter jurisdiction to hear violations of the laws and ordinances of the City of LaGrange. Ga. L. 1901, p. 477, § 18. Therefore, the City of LaGrange

had two courts operating simultaneously with different subject matter jurisdiction: (1) the City Court of LaGrange, with subject matter jurisdiction over state misdemeanors; and (2) the Mayor's Court, with subject matter jurisdiction over violations of municipal ordinances.

In 1951, a legislative act was passed which allowed the election of a recorder for the City of LaGrange and renamed the Mayor's Court the Recorder's Court. Ga. L. 1951, p. 2623, § 1 (c).

The enactment of Ga. L. 1962, p. 3020, created the Civil and Criminal Court of Troup County (the State Court of Troup County) and abolished the City Court of LaGrange, but this act did not repeal either the act creating the Mayor's Court or the act renaming the Mayor's Court as the Recorder's Court. However, Ga. L. 1962, p. 3020, § 34 specifically repealed Ga. L. 1899, p. 385, which created the City Court of LaGrange.

In 1986, a legislative act was passed to amend Chapter 32 of Title 36 of the Official Code of Georgia under which the Recorder's Court of LaGrange became a municipal court with continued exclusive subject matter jurisdiction over violations of municipal ordinances. OCGA § 36-32-1; Ga. L. 1986, p. 784.

Thus, since the City Court of LaGrange never had subject matter jurisdiction to hear violations of municipal ordinances, then Ga. L. 1962, p. 3020, which established the Civil and Criminal Court of Troup County (the State Court of Troup County) and which abolished the City Court of LaGrange, did not grant the State Court of Troup County subject matter jurisdiction to try violations of city ordinances. The transfer of cases under § 30 of such legislative act was simply the transfer of all state misdemeanor cases *currently pending* before the City Court of LaGrange at the time it was abolished; such transfer was in order to avoid an inability to prosecute pending cases and to provide continuity of jurisdiction. Ga. L. 1962, p. 3020, § 30. Thus, there has been no special statutorily conferred subject matter jurisdiction for the State Court of Troup County to try a municipal violation.

If a state court, sitting outside some statutorily conferred subject matter jurisdiction, presided over the trial of a violation of a municipal offense, then any judgment entered thereon would be void and a mere nullity, for lack of subject matter jurisdiction. *Hubbard v. State*, 225 Ga. App. 154 (483 SE2d 115) (1997). On appeal, this Court would be required to reverse the conviction and remand the case; double jeopardy would not attach, and the case could be retried in the court with proper subject matter jurisdiction.

2. However, within the ambit of OCGA § 15-7-80 et seq., a state court can try a violation of a municipal ordinance while sitting as a municipal court. In 1992, the General Assembly enacted OCGA § 15-

7-80 et seq. Ga. L. 1992, p. 1161, § 1. Under OCGA § 15-7-80, "[t]he governing authority of any county may contract with the governing authority of any municipality within the county for the county to furnish municipal court services to the municipality as authorized by this article; and the governing authorities of municipalities are likewise authorized to enter into such contracts with county governing authorities." Since the City of LaGrange, Georgia, lies within Troup County, this Code section gives the State Court of Troup County jurisdiction to sit as a municipal court and to try a violation of the City Code of LaGrange, Georgia, *but does not give the State Court concurrent jurisdiction over municipal offenses.*

The record is replete with evidence that the state court was, in fact, operating under contract as a municipal court. The assistant solicitor stated as an officer of the court, on the record that "the state is under the impression that we are operating under contract[,]" and the trial judge took judicial notice and specifically found that "the fact that we were acting under contract basically as the city recorder's court would remove the requirement that would otherwise be to bring in a certified copy of that ordinance." No objection was made at the trial level by counsel for the defendant as to the existence of a contract for the state court to provide municipal court services, and in fact, counsel has not raised the existence of such a contract as an enumeration of error before us. There is a presumption in favor of the regularity and legality of all proceedings in the trial court. *Merrill v. State,* 201 Ga. App. 671 (411 SE2d 750) (1991); *Conley v. State,* 172 Ga. App. 884, 885 (2) (324 SE2d 750) (1984). This Court will not presume error from a silent record. *Merrill v. State,* supra; *Rogers v. State,* 155 Ga. App. 685 (272 SE2d 549) (1980).[3] Therefore, since the question of the existence of or the legality of the contract was not raised at the trial level and is not before this Court, this Court must presume that the contract between Troup County and the City of LaGrange was proper under OCGA § 15-7-80 et seq.

Since the State Court of Troup County was operating under a contract to provide municipal court services to the City of LaGrange as the municipal court, it would have jurisdiction to hear either the state offense of public drunk as the state court or the municipal offense of public drunk as a municipal court. Counsel for the appellant did not object to the State's election to proceed under the viola-

---

[3] Even though the issue of subject matter jurisdiction can be raised at any time, the issue of jurisdiction based on the existence of or the legality of a contract entered into between a county and a municipality pursuant to OCGA § 15-7-80 et seq. allowing the county to furnish municipal court services to the municipality must be raised at the trial level, so that the trial court can have an evidentiary hearing to prove or disprove the contract. Otherwise, this case would have to be remanded for such factual determination.

tion of the public drunk ordinance of the City Code of LaGrange, § 35-1-25. When the State Court of Troup County imposed sentence, it was, therefore, acting as a municipal court for the City of LaGrange and not as a state court. If the State had elected to proceed on the other two counts of the indictment, the state court could have tried the other state offenses, as well as the municipal offense, at the same time but would have to indicate in its sentences the jurisdiction for each, i.e., municipal court for the offense of public drunk and state court for the charges of reckless conduct and criminal trespass.[4]

A direct review of a conviction in a municipal court shall be by writ of certiorari to the superior court of the county within which the municipality lies. OCGA § 5-4-1. Therefore, when a state court is sitting as a municipal court pursuant to OCGA § 15-7-80 et seq., all direct reviews of any conviction or final judgment shall be by writ of certiorari to the appropriate superior court. This Court, therefore, lacks subject matter jurisdiction to consider the appellant's direct appeal. Further, this appeal cannot be transferred to the superior court for determination, because an appeal is not the statutory procedure for review by a superior court of an inferior court; the notice of appeal does not satisfy the mandated elements of an application for a writ of certiorari. Therefore, this appeal should be dismissed.

I am authorized to state that Presiding Judge Pope joins in this dissent.

DECIDED NOVEMBER 17, 1997.

*Patterson & Patterson, Jackie G. Patterson, Yasma Patterson*, for appellant.
*Louis J. Kirby, Solicitor*, for appellee.

---

[4] Pursuant to OCGA § 15-7-83, when a state court is acting as a municipal court, "judges and other officers of the state court shall be styled as judges and officers of the municipal court; and all pleadings, process, and papers of the municipal court shall be styled as such and not as pleadings, process, and papers of the state court." Such Code section also provides that "[t]he dockets and other records of the municipal court shall be kept separately from those of the state court." Even though this procedure was not followed in the case sub judice, the appellant's failure to raise this as error on appeal precludes our review of this matter. This Court cannot acquire subject matter jurisdiction through the error of the state court sentence to indicate on its face that the sentence was imposed under municipal court jurisdiction only.