A01A0854, A01A0863. COPELAND v. THE STATE (two cases).
(546 SE2d 351)

ELDRIDGE, Judge.

Under indictment no. 99CR1657, Elmore Lamar Copeland was charged with two counts of first degree forgery for possessing (1) a Georgia State Department of Motor Vehicles ("DMV") Limited Power of Attorney ("POA") and (2) a DMV Title Application, both of which were purportedly made by the authority of Mirian Shepard. Similarly, under indictment no. 2000CR361, Copeland was charged with

---

[9] (Citations and punctuation omitted.) *Hill v. All Seasons Florist,* 201 Ga. App. 870, 872 (412 SE2d 619) (1991).

two counts of first degree forgery for possession of the same two types of DMV documents purportedly made by the authority of Theodore Primus. The indictments were joined for trial, and a jury found Copeland guilty as charged. He appeals, and upon review of the enumerated errors, we affirm Copeland's convictions.

In a light most favorable to the jury's verdict,[1] the record shows that Shepard's and Primus' vehicles were stolen. In order to make the stolen vehicles appear legal, paperwork was needed; in order to get such paperwork, one would "go to Elmo," i.e., Copeland who ran NW Tag & Title Service on Bankhead Highway in Fulton County. Herein, individually, Copeland was approached by two people who required this "service" with regard to Shepard's and Primus' stolen vehicles.

In furtherance of such, Copeland forged two DMV POA documents wherein Shepard and Primus ostensibly "gave" power of attorney to Copeland to sign their respective names in order to obtain a replacement title for each stolen vehicle. Thereafter, through the forged POA documents, Copeland filled out a DMV MV1Z Replacement Title Application on each stolen vehicle by signing Shepard's and Primus' names, respectively. On January 14, 1999, the two forged Primus documents were turned in to the DMV office on Tradeport Boulevard in Clayton County. On January 19, 1999, the two forged Shepard documents were turned in to the same DMV office. On the same respective days that the forged paperwork was turned in, Copeland personally picked up the "counter" replacement title for each stolen vehicle and signed his name as receiving such. "Counter" replacement titles are those that are issued over the counter, usually to dealers like Copeland, because the DMV attempts to "process paper quickly for folks like Mr. Copeland." In each instance, the notation "counter" on the replacement title indicates that it was issued to the person who presented the paperwork: "Walk in, walk out, that's what that means."

Thereafter, on each replacement title, ownership of the stolen vehicle was transferred to the person whose name Copeland was given by the one seeking legal status for each vehicle. He then mailed each new title to the address he was given. Copeland charged approximately $400 for the performance of each such "service."

Acting on information obtained from the new "owner" of Shepard's vehicle, as well as other relevant information, Atlanta Police Special Investigator R. Straut went to the DMV and obtained a title history on both stolen vehicles, including the POA and Title Application on file. Believing Copeland might still be in possession of the

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

replacement title on Shepard's stolen vehicle, Straut sought a search warrant for Copeland's office, stating in his affidavit that Copeland "presented documents that were forged in order to obtain a duplicate counter title in order to take possession of a motor vehicle that had been reported stolen." The warrant was executed, and a return was filed on April 8, 1999. *Held*:

1. Because of a search warrant defect, the trial court suppressed all documents obtained during the investigating officer's search of Copeland's business. The court held as admissible any documents retrieved from public offices, since "[t]hey are public records and can be obtained by anyone." In his first enumeration of error, Copeland challenges this second ruling, contending the trial court "erred in failing to suppress documents obtained from public records," specifically State's Exhibits 1-8: the forged Shepard POA and Title Application and the forged Primus POA and Title Application. However, at the time the trial court made its ruling, there was no objection thereto. And, during trial, there was no objection to the admission of State's Exhibits 1-8. Copeland acquiesced in the trial court's ruling, as well as to the admission of the documents in question. Absent a timely objection, nothing is presented for this Court's review.[2]

2. In a two-prong attack, Copeland contends the trial court erred in denying his plea in bar of former jeopardy. We disagree.

Copeland was indicted in Fulton County on April 30, 1999, for — inter alia — two counts of forgery for possessing a DMV POA and DMV Title Application purportedly made by the authority of Shepard. These counts were dead docketed by the Fulton County District Attorney's Office on June 17, 1999. The Fulton County case was not "transferred" to Clayton County. Nor does the record show that the Clayton County charges arose in any relation to the Fulton County charges.

(a) First, Copeland argues that jeopardy attached when issue was joined in Fulton County and, thus, trial in Clayton County is barred by double jeopardy. But jeopardy attaches when the jury is sworn, and thus the denial of the plea in bar on this basis was not error.[3]

(b) Next, Copeland argues that a speedy trial demand was filed in the Fulton County case and that, since it had run, Clayton County had no right to try him on the same charges. In that regard:

(i) Our review shows no evidence that a speedy trial demand pursuant to OCGA § 17-7-170 was filed on the Fulton County charges, and Copeland does not direct our attention to any such evi-

[2] *Teat v. State*, 237 Ga. App. 867, 868 (516 SE2d 794) (1999).
[3] *Cooke v. State*, 230 Ga. App. 326, 327 (496 SE2d 337) (1998).

dence in the record. The burden is on the appellant to show error affirmatively by the record.[4] "[W]here the proof necessary for determination of the issues on appeal is omitted from the record, an appellate court must assume that the judgment below was correct and affirm."[5]

(ii) A speedy trial demand "shall be binding only in the court in which the demand is filed, except where the case is transferred from one court to another without a request from the defendant."[6] Here, the Fulton County charges were dead docketed, not transferred. A speedy trial demand filed in Fulton County does not impact on charges brought in Clayton County, and a Clayton County prosecutor cannot be held to have knowledge of a speedy trial demand filed in a separate case in Fulton County, even if the charges brought in both counties are similar. Accordingly, the trial court's denial of Copeland's plea in bar on this basis was not error.

3. Just prior to trial, the State made an oral motion to consolidate indictment nos. 99CR1657 and 2000CR361 for trial purposes. Over objection, the trial court granted the State's motion. We find no abuse of the court's discretion.

> To avoid multiple or successive prosecutions, a prosecutor is required to try in a single prosecution all the crimes arising out of the same conduct within the jurisdiction of a single court, except the court, in the interest of justice, may order that one or more of such charges be tried separately. Severance (or joinder) in the interest of justice is discretionary. Where, as here, the evidence shows a continuous scheme or ongoing spree such that evidence of one incident would be admissible in the trial of the similar crimes[,] . . . the trial court did not abuse its discretion in granting the State's motion to consolidate the indictments for trial.[7]

Copeland also contends the trial court erred because he did not receive "formal notice," i.e., written notice, of the State's intent to join the cases together and that such requires reversal pursuant to Uniform Superior Court Rule 31.1. We do not agree.

The record shows that, prior to trial, the prosecutor had "spoken with Mr. Hibbert and Ms. Eaves [defense counsel] and discussed the fact that I would be moving for joinder in this case." Defense attorney

---

[4] *State v. O'Quinn*, 192 Ga. App. 359, 360 (1) (384 SE2d 888) (1989).

[5] (Punctuation omitted.) *Clark v. State*, 240 Ga. App. 303 (523 SE2d 388) (1999).

[6] OCGA § 17-7-170 (a).

[7] (Citations and punctuation omitted.) *Moore v. State*, 245 Ga. App. 641, 644 (3) (537 SE2d 764) (2000).

Hibbert candidly conceded that the parties had "many, many informal conversations over these issues. . . . But nonetheless, we would object to the joinder issue." In addition, the parties signed a consent agreement whereby all motions filed in one case were made applicable to the other. Also, the same evidence as to one case was going to be presented to the jury in the other case as similar transaction evidence, making meritless Copeland's argument that joinder of the offenses would "create a very strong area of prejudice."

Before this Court, appellate counsel contends that "[a]ppellant's counsel in 2000-CR-00361-2 was forced to trial unprepared and without notice." But there is absolutely no evidence of record in support of this assertion; the referenced trial counsel never made such assertion; and the record belies it. Considering that defense counsel had notice prior to trial that the cases would be joined and that evidence of both cases would go before the jury regardless of joinder, we do not find the lack of "formal," written notice of joinder requires reversal of the jury's verdict. Alleged error, to be reversible, must be harmful.[8]

4. Copeland next challenges the sufficiency of the evidence as to each count of forgery and contends the trial court erred in denying his motion for directed verdict. We disagree.

> The standard of review for the denial of a motion for directed verdict of acquittal is the same as that for reviewing the sufficiency of the evidence to support a conviction. Under that standard we view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[9] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[10]

Here, Copeland admits that the State proved that the DMV documents in question were forged. He also admits that "[e]vidence that Appellant picked up completed titles may be considered circumstan-

---

[8] *Wakily v. State*, 225 Ga. App. 56, 61 (10) (483 SE2d 313) (1997).
[9] Supra.
[10] (Citation and punctuation omitted.) *Chambers v. State*, 244 Ga. App. 138, 139 (534 SE2d 879) (2000).

tial evidence that the Appellant possessed and uttered the [forged] documents." However, Copeland argues that such circumstantial evidence failed to exclude all reasonable hypotheses save his guilt.

> Whether or not in a given case circumstances are sufficient to exclude every reasonable hypothesis save the guilt of the accused[ ] is primarily a question for determination by the jury. This of necessity is so, for we have no legal yardstick by which we can ordinarily determine what in a given case is a reasonable hypothesis, save the opinion of twelve upright and intelligent jurors. Only where the evidence is insupportable as a matter of law may the jury's verdict be disturbed, even where the evidence is circumstantial.[11]

In this case, it is undisputed that the vehicles in question were stolen. "Everyone" knew that Copeland was the one who could obtain a title for a stolen vehicle. Copeland signed his name to both the Shepard and Primus MV1Z Title Applications as "POA," and he apparently filled out his name on the Shepard and Primus documents establishing his status as POA, since the handwriting appears the same on all. Copeland received a "counter" replacement title on each vehicle, indicating that he had "walked in" with the forged documents and "walked out" with the over the counter replacement titles in one visit. Notably, there is evidence that Copeland personally transacted business at the DMV office often enough to become "familiar" therein. And there is absolutely no evidence that anyone other than Copeland was involved in the performance of this "service" for which he had become so well recognized.

We find this evidence sufficient to allow the jury to conclude that Copeland possessed and submitted the forged documents as charged.[12]

5. Copeland also contends that he received ineffective assistance of trial counsel, since his attorney failed to object to the admission of State's Exhibits 1-8, the forged Shepard POA and Title Application and the forged Primus POA and Title Application. Copeland contends that these documents were tainted as the "fruit"[13] of the illegal search of his office and, as such, were inadmissible.

> To establish ineffectiveness of trial counsel under *Strickland v. Washington*,[14] [Copeland] must show both that counsel's

---

[11] (Citations and punctuation omitted.) *Lathan v. State*, 241 Ga. App. 750, 751 (1) (526 SE2d 350) (1999).

[12] *Robbins v. State*, 269 Ga. 500, 501 (1) (499 SE2d 323) (1998).

[13] See, e.g., *Ruffin v. State*, 201 Ga. App. 792, 793 (412 SE2d 850) (1991), quoting *Wong Sun v. United States*, 371 U. S. 471 (83 SC 407, 9 LE2d 441) (1963).

[14] 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. In addition, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[15]

The burden to establish ineffective assistance of counsel is a heavy one and requires Copeland to demonstrate both error and prejudice.[16] Thus, Copeland is mistaken with regard to this enumeration of error when he asserts that the State failed to prove that the documents in question were NOT the fruit of the illegal search. In this ineffective assistance of counsel claim, it is Copeland's burden to show that the documents *were* tainted by the illegal search and, thus, his attorneys were ineffective for failing to object thereto.

In light of the fact that (1) Copeland did not call his attorneys to testify at the motion for new trial hearing with regard to this claim of error; (2) the officer testified that the documents in question formed the probable cause to obtain the search warrant; (3) the affidavit in support of the search warrant references forged documents; and (4) Copeland's trial attorneys — who prevailed in the motion to suppress and were keenly aware of the trial court's ruling thereon — did not object to the admission of the documents at issue, we conclude that Copeland has not carried his burden to show State's Exhibits 1-8 were the "fruit" of the illegal search of his office. Accordingly, no objection by trial counsel was warranted, and this enumeration of error is without merit.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 28, 2001 — 

*Alfred L. King, Jr.,* for appellant.

---

[15] (Citation and punctuation omitted.) *Hamilton v. State*, 238 Ga. App. 320, 322 (3) (517 SE2d 118) (1999).

[16] *Wallace v. State*, 272 Ga. 501, 504 (503 SE2d 721) (2000).

*Robert E. Keller, District Attorney, Staci L. Guest, Assistant District Attorney*, for appellee.