## A02A0684. GARLAND v. THE STATE.
(568 SE2d 540)

RUFFIN, Judge.

A jury found Kevin Brett Garland guilty of driving under the influence with an unlawful alcohol concentration and speeding.[1] Garland appeals, asserting that the trial court erred in failing to grant a continuance, in making several evidentiary rulings, and in limiting his closing argument. For reasons that follow, we affirm.

---

[1] The jury acquitted Garland of driving under the influence to the extent that it was less safe to drive and failure to maintain lane.

Viewed in favor of the jury's verdict, the evidence at trial showed that Officer J. W. Moody stopped Garland, who was driving over 85 mph in a 65-mph zone. After approaching Garland's car, Moody smelled alcohol on his breath. Upon questioning, Garland told Moody that he had consumed two beers that evening. As part of his field sobriety evaluation, Moody administered an alco-sensor test on Garland's breath, which tested positive for alcohol.

Based on his opinion that Garland was under the influence to the extent that it was less safe to drive, Moody arrested Garland and read him an implied consent warning. After driving Garland to the police station, Moody tested Garland's blood alcohol concentration using an Intoxilyzer 5000. Moody conducted two tests within four minutes, and each time the results measured 0.104 grams. Garland was subsequently charged with the offenses at issue here.

1. Garland asserts that the trial court erred in denying his motion to continue the trial so that he could obtain a document that was unavailable in court that morning, but was introduced into evidence at a previous hearing. The record shows that, when he moved for the continuance, Garland explained that the document was a "computer-aided dispatch [that contained] about a three-hour block of radio logs." He informed the court that it was introduced at a previous motions hearing, that the court reporter kept it, and that he "need[ed] to have that evidence to proceed in [the] case." It appears that the court reporter was visiting her sick mother in New York, and Garland first learned that the document was unavailable on the morning of trial. On appeal, Garland argues that the trial court erred in denying a continuance under these circumstances. We disagree.

The trial court had discretion in ruling on Garland's motion for continuance.[2] Even if Garland was surprised that the dispatch logs were unavailable on the morning of trial, he has not demonstrated how those logs would have benefitted his defense. And where such a benefit is not shown to exist, we will not conclude that a continuance was necessary.[3] Accordingly, we find no abuse of discretion.[4]

2. Garland next asserts that the trial court erred in denying his motion in limine to suppress the Intoxilyzer 5000 results based on a purportedly confusing implied consent warning. Specifically, Garland contends that, when Officer Moody was conducting the alco-sensor test, he erroneously informed Garland that the legal blood alcohol limit in Georgia was 0.08 grams and that, according to the

---

[2] See *Martin v. State*, 268 Ga. 682, 683 (2) (492 SE2d 225) (1997).

[3] See id. at 684; *Johnson v. State*, 255 Ga. 703, 704 (2) (342 SE2d 312) (1986).

[4] See *Martin*, supra; *Johnson*, supra.

alco-sensor, he was " 'just above the legal limit.' "[5] Although Garland acknowledges that Moody informed him of the correct legal limit of 0.10 grams when he read the informed consent warning, he argues that the disparity left him confused about his legal rights.

We reject Garland's argument for two reasons. First, while it appears that Officer Moody's erroneous statement was recorded by a videotape, neither the actual videotape nor a transcript of it is included in the appellate record. Thus, to support this assertion, Garland cites the Court to the transcript of the motions hearing during which his trial counsel repeated Moody's alleged misrepresentation. Counsel's statement, however, is not evidence.[6] Thus, Garland has not shown by the record that the trial court erred in denying his motion.[7]

Second, even if Garland had presented actual evidence of Moody's statement, we addressed a similar contention in *Maurer v. State*[8] and concluded that "any understatement of the legal limit did not change the substance of the notice in any way harmful to [the defendant]." Thus, we find no error.

3. In a related enumeration, Garland asserts that the trial court erred in precluding him from testifying about Officer Moody's erroneous statement concerning the 0.08 blood alcohol level and the alco-sensor results. Again, we find no error.

"Alco-sensor results are not used as evidence of the amount of alcohol or drug in a person's blood. Instead, the alco-sensor is used as an initial screening device to aid the police officer in determining probable cause to arrest a motorist suspected of driving under the influence of alcohol."[9] Accordingly, the results are inadmissible to show the blood alcohol level revealed by the test.[10] Although Garland contends that he wanted to use Officer Moody's statement about the results to prove that Moody intentionally misled him, the evidence also would have shown that the alco-sensor revealed Garland was "just above" 0.08 and, therefore, implicitly below the 0.10 legal limit. The trial court did not err in excluding this testimony.[11]

4. Garland next asserts that the trial court erred in precluding him from entering into evidence a police department log containing

---

[5] When Garland committed the offense on January 22, 2000, the legal blood alcohol limit was under 0.10 grams. Effective July 1, 2001, the legislature lowered the limit to less than 0.08 grams. See Ga. L. 2001, p. 208, § 1-5.

[6] See *Anthony v. State*, 213 Ga. App. 303, 305 (2) (444 SE2d 393) (1994).

[7] See id.

[8] 240 Ga. App. 145, 147 (2) (525 SE2d 104) (1999).

[9] (Citation and punctuation omitted.) *Porche v. State*, 217 Ga. App. 325-326 (1) (457 SE2d 578) (1995).

[10] See id. at 326.

[11] See id.

the results of his Intoxilyzer 5000 tests. The log reveals that Moody took two breath samples from Garland, and each one measured 0.104 grams. The log further shows that Moody tested another subject shortly after Garland, and both those samples measured 0.18 grams. In addition to these two subjects, the log contains the outcome of a quarterly inspection on the machine and the results of tests conducted by Moody and other officers on another twelve individuals. Outside the jury's presence, Garland proffered that the log would

> be the foundation for [his] expert's testimony because the two samples are .104 and .104. It's a contamination issue. It further shows Officer Moody's propensity not to change mouthpieces, because right after [Garland's] it's a .180, .180. . . . [M]y expert's testimony is going to be that it is impossible . . . to have alcohol across a three-minute period be stable. Alcohol peaks and goes down.

The trial court found that the test results from other individuals were irrelevant and denied Garland's request to introduce the log into evidence. We find no error.

For evidence to be relevant, it

> must relate to the questions being tried by the jury and bear upon them either directly or indirectly. Irrelevant matter should be excluded. This rule favors the admission of any relevant evidence, no matter how slight its probative value, and evidence is relevant if it renders the desired inference more probable than it would be without the evidence. But the admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.[12]

The log at issue here clearly contained irrelevant information. The test results of the other subjects would not show that Moody failed to change mouthpieces when he tested Garland or that Garland's two samples were cross-contaminated. Thus, the trial court did not abuse its discretion in excluding the log.[13]

Moreover, it is unclear how the trial court's ruling prejudiced Garland. His Intoxilyzer 5000 test results had already been admitted into evidence, and that exhibit, as well as Moody's testimony, clearly

---

[12] (Citations and punctuation omitted.) *Knapp v. State*, 229 Ga. App. 175, 177 (2) (493 SE2d 583) (1997).

[13] See id.

showed that both samples measured 0.104 grams. Thus, to the extent that Garland wanted to use the identical results reflected in the log as the basis for his expert's testimony concerning cross-contamination, the evidence was already before the jury. Likewise, the State had introduced a certificate of inspection revealing that the quarterly inspection, mentioned in the log, was conducted and that the machine was "in good working order." Considering this evidence, introduction of the log "would have been largely cumulative, and a trial court does not abuse its discretion in excluding cumulative evidence."[14] Accordingly, we find no error.

5. Garland asserts that the trial court erred in allowing the State to use hearsay testimony to lay a foundation under OCGA § 40-6-392 (a) (1) for the introduction of the Intoxilyzer 5000 breath test results. The Code section requires in part that, before a breath test can be considered valid, it must

> have been performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation on a machine which was operated with all its electronic and operating components prescribed by its manufacturer properly attached and in good working order and by an individual possessing a valid permit issued by the Division of Forensic Sciences for this purpose.[15]

In this case, the prosecutor attempted to lay the foundation by asking Officer Moody whether the testing method he used was "approved by the Division of Forensic Sciences ('DFS') and the Georgia Bureau of Investigation." Garland objected to the inquiry, arguing that any such approval would have been in writing from the DFS and that Moody's response would, therefore, necessarily constitute hearsay and violate the best evidence rule. The trial court overruled Garland's objection, and he now asserts that ruling as error.

Pretermitting whether Moody was competent to testify that the Intoxilyzer 5000 was approved by the DFS,[16] we find that the State satisfied the foundational requirement with other evidence. Moody testified that he was trained to operate the Intoxilyzer 5000 and that he had a permit from the DFS to operate it. The permit, which was entered into evidence, shows that Moody was certified by the DFS "to perform chemical analyses of breath specimens pursuant to the Uni-

---

[14] *Billings v. State*, 251 Ga. App. 432, 435 (3) (558 SE2d 10) (2001).

[15] OCGA § 40-6-392 (a) (1) (A).

[16] See *Willoughby v. State*, 153 Ga. App. 434, 436 (1) (265 SE2d 352) (1980) (concluding that "officer's testimony, which was objected to, was not competent to establish whether the equipment was approved by the Director of the State Crime Laboratory").

form Act Regulating Traffic on Highways [and the authorization is] . . . applicable to analyses utilizing [an] Intoxilyzer Model 5000." This evidence satisfies the foundational requirement at issue.[17]

6. Finally, Garland asserts that the trial court erred in precluding him from commenting about an uncalled witness during closing argument. The record shows that, during his argument, Garland's counsel asked the jury: "Where is Trooper Thackett? She's got to be available." The trial judge interrupted counsel, stating: "I think I ruled on that pre-trial." Without further comment, counsel continued his closing with a different argument.

With no citation to the record, Garland contends on appeal that "Thackett was the area supervisor that signs the certificates of inspection for the breath test machine. Since she signed the certificate on the accuracy of this particular machine, she had knowledge of material and relevant facts for the jury to hear." Thus, Garland contends, the trial court should have allowed him to comment on Thackett's absence.

Pretermitting the question of error, we concluded that Garland has not preserved the issue for appeal. Although the trial court speculated that it had "ruled on that pre-trial," we do not know from the court's statement what "that" issue is. Furthermore, while it appears that the trial court had earlier denied Garland's request to instruct the jury on "uncalled available witnesses," Garland has not pointed to any ruling by the court relating to his closing argument. More importantly, Garland has not shown that he ever contested such a ruling, and the record reveals that he offered no protest following the court's brief statement during his argument.

"No matter how erroneous a ruling of a trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. He must stand his ground. Acquiescence deprives him of the right to complain further."[18] Accordingly, this assertion presents nothing for review.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JULY 2, 2002 — 

*McDonald & Cody, Douglas W. McDonald, Jr.,* for appellant.

---

[17] See *Conner v. State*, 205 Ga. App. 564, 565-566 (2) (422 SE2d 872) (1992); *Page v. State*, 202 Ga. App. 828, 830 (2) (415 SE2d 487) (1992); *Fowler v. State*, 200 Ga. App. 505 (1) (408 SE2d 449) (1991).

[18] (Citation and punctuation omitted.) *Smith v. State*, 192 Ga. App. 768, 771 (2) (386 SE2d 530) (1989). See also *Copeland v. State*, 248 Ga. App. 346, 348 (1) (546 SE2d 351) (2001); *Leatherwood v. State*, 212 Ga. App. 342-343 (1) (b) (441 SE2d 813) (1994).

*Gerald N. Blaney, Jr., Solicitor-General, Jeffrey P. Kwiatkowski, Assistant Solicitor-General*, for appellee.